(No. 12299.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WALTER SOBZCAK *et al.* Plaintiffs in Error.

*Opinion filed December 18, 1918—Rehearing denied Feb. 6, 1919.*

1. CRIMINAL LAW—*when failure to allow separate trial is not prejudicial.* Failure to allow three of the defendants in a criminal case a trial separate from that of the fourth defendant, who was described in the indictment as an habitual criminal, is not prejudicial, where the latter defendant denied all connection with the crime and was found not guilty by the jury.

2. SAME—*when there is no variance as to ownership of money and checks stolen.* An averment in an indictment for robbery that the money and checks stolen were the property of a certain bank is supported by proof that the money and checks had been delivered by a depositor to an agent of the bank who had been sent to get them and that they were taken by the robbers from the agent.

3. SAME—*when alleged error in allowing stenographer to read notes will not reverse.* Alleged error in permitting a stenographer to read from his notes an admission of guilt made by the defendants in the presence of the police is not ground for reversal, where such admission has also been testified to by the police officers and another witness, all of whom were present at the examination.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. JOSEPH SABATH, Judge, presiding.

LEWIS A. HAUSCHILD, and FRANK A. MCDONNELL, (THOMAS E. SWANSON, of counsel,) for plaintiffs in error.

EDWARD J. BRUNDAGE, Attorney General, MACLAY HOYNE, State's Attorney, and EDWARD C. FITCH, (EDWARD E. WILSON, and WALTER STANTON, of counsel,) for the People.

Mr. JUSTICE CARTER delivered the opinion of the court:

Walter Sobzcak and Stanley Waranowski, the plaintiffs in error, with two others, were tried in the criminal court of Cook county on a charge of robbery and sentenced to serve indeterminate sentences in the State reformatory. This writ of error was sued out to review that judgment.

Frank Machowski, a young man seventeen years of age, was employed as a bank messenger at the Southwest State Bank, Fifty-first street and Ashland avenue, in Chicago. A part of his duties was to balance up sheets and checks during the early part of each day and in the afternoon he would go from one business place to another in that part of the city and receive deposits from various depositors. On December 5, 1917, he left the bank about ten minutes to three o'clock and went to certain places for deposits. From the People's Fuel Supply Company, at Forty-ninth street and Racine avenue, he received $384.60 in currency and $126.70 in checks. He testified that he entered the deposit of these amounts in its deposit book, took the deposit slip, money and checks and put them in a grip belonging to the Southwest State Bank and started to go to Hermitage avenue and Forty-sixth street to get another deposit. As he was passing under the elevation of the Grand Trunk railway tracks, going north on the east side of Racine avenue, he saw two young fellows coming from the opposite direction. When

they met him one of them said "Hello!" and pointed a re-
volver toward him, and at the same time the other fellow
snatched the satchel from the messenger and started to run
across the street towards a gangway. The evidence as to
what was meant by the witness by "gangway" is not very
clear, but he seems to have referred to a narrow passage
near the right of way of the railroad elevation. Machow-
ski, seeing that the one who had run away with the satchel
had no revolver, started to run after him, and at the same
time a third man across the street ran for the gangway and
reached there ahead of him, so that Machowski was behind
all three as they ran through the gangway. They then ran
to another gangway and down an alley which had a gate
across it. The man who had taken the satchel got over
the gate, and the man who held the revolver opened the
gate, which permitted the messenger to run through and get
ahead of the man with the satchel. When they reached a
street, about twelve feet from the gate, the man whom Ma-
chowski had seen across the street when the satchel was
taken ran after him and struck him, dazing him so that
he gave up the pursuit. Machowski then returned to the
People's Fuel Supply Company, from which he had received
the deposits, and informed the employees of what had hap-
pened and asked them to notify the police.

The evidence tends to show that the plaintiffs in error
were arrested on the same day that this robbery was com-
mitted or on the following morning. There is some dis-
pute as to the exact time they were arrested, but at any
rate all of the accused were in the custody of the police
on December 6 and 7 and were questioned by the police. A
number of men were brought into the presence of Machow-
ski, and the first time it appears that he was not entirely
clear as to whether any of them were any of the guilty
parties, but on December 7 he identified the two plaintiffs
in error and Ben Straka, and testified on the trial that Wa-
ranowski was the man who held the gun and told him to

halt, that Straka was the man who snatched the satchel and
ran away with it, and that Sobzcak was the man across the
street who came to the gangway as they were running and
who later struck him on the head, necessitating his giving
up the pursuit. Testimony was also given by a police offi-
cer, an assistant State's attorney and a stenographer in the
employ of the city as to certain confessions of plaintiffs in
error and Straka on the night of December 7, and a second
police officer also testified to admissions of guilt on the part
of Waranowski. Plaintiffs in error both testified denying
that they committed the crime, as did also Straka; and the
woman with whom Waranowski roomed gave testimony
which tended to prove that Waranowski was not present
at the scene of the crime at the time it was committed.

Counsel for plaintiffs in error argue that the trial court
committed error in not granting them a trial separate from
Herman Lexow, who was indicted and tried jointly with
them but against whom it is claimed by counsel there was
no incriminating evidence. They argue that the only pur-
pose of including Lexow in the indictment was to prejudice
plaintiffs in error before the jury; that as the indictment
stated that Lexow was an habitual criminal it necessarily
prejudiced the plaintiffs in error in trying them jointly with
him. Plaintiff in error Sobzcak, so far as the testimony
shows, previously had no criminal record. It appears from
the record that Waranowski had served a term at the re-
formatory for burglary. The only testimony connecting
Lexow with the robbery was that of a police officer, to the
effect that Waranowski and Straka told him that Lexow
had informed them that a hold-up of the messenger, Ma-
chowski, when he was making his collections, would be "like
taking candy from a baby." Lexow, on being confronted
with the witnesses in the presence of the police, insisted that
he had never said anything of the kind to them. The ques-
tion as to whether persons jointly indicted should be given
a separate trial rests largely in the sound discretion of the

trial judge, and no definite rule can be laid down covering all cases as to when separate trials should be allowed. In any event, we do not see how the evidence on this trial could have prejudiced plaintiffs in error. While the police officer testified that he had been told certain things by Waranowski, Lexow himself denied that he had ever said what it is claimed one of the plaintiffs in error told the police officer he had stated to him. Sobzcak, Waranowski and Straka were all found guilty by the jury but Lexow was found not guilty. It is manifest, therefore, that the fact of trying Lexow with the plaintiffs in error could not have prejudiced them.

Counsel for plaintiffs in error further contend that there was a fatal variance between the indictment and the proof as to the ownership of the property. The former charged that plaintiffs in error took money and checks, the property of the Southwest State Bank. As we understand the argument, it is contended that the proof does not show that this money that was taken did belong to the Southwest State Bank. Machowski testified that he obtained the money and checks and credited them to the People's Fuel Supply Company on the books of the bank. The testimony of Klinenberg, president of the People's Fuel Supply Company, was to the effect that the money and checks had been delivered to the messenger as a deposit for the Southwest State Bank. The evidence shows, without contradiction, that Machowski was the agent of the bank to receive this money. Having received it as such agent, it is clear that when it was taken from him it was the property of the bank. There is no contradiction as to any of this testimony. There is no merit in the objection as to variance between the indictment and proof as to the ownership of the property.

It is also argued that error was committed in permitting a stenographer to read from his notes as to the examination of plaintiffs in error by an assistant State's attorney in the presence of the police and the complaining witness. The

police officer and the assistant State's attorney testified as to the admission by both plaintiffs in error that they held up and robbed the messenger, Machowski. The testimony read from the notes of the stenographer apparently referred to the same admissions made by plaintiffs in error. Conceding for the purposes of this case that the stenographer's notes were improperly read in evidence on the trial, we can not see how plaintiffs in error were injured thereby. If all that evidence were stricken out, the testimony of the police officers and the assistant State's attorney and the complaining witness is still sufficient to show that both plaintiffs in error admitted their guilt at these interviews. This being so, this court will not reverse the case even though error was committed on the trial in permitting the notes to be read from the stenographer's notebook. *People* v. *Cassidy,* 283 Ill. 398; *People* v. *Peters,* 241 id. 273; *DuBois* v. *People,* 200 id. 157.

It is further urged that reversible error was committed in allowing the revolver alleged to have been used in the hold-up to be offered in evidence on insufficient identification. The messenger, Machowski, testified that the revolver in question was the one held by Waranowski at the time, and a police officer testified that Waranowski, in Sobzcak's presence, admitted that it was the revolver he used at the time Machowski was held up. Sobzcak did not deny this, but, on the contrary, the police officer testified that at this same interview Sobzcak admitted that he was standing across the street and was one of the parties to the hold-up and was the one who hit the messenger. This evidence as to the identification of the revolver was sufficient to justify its admission in evidence.

Counsel further argue that error was committed in permitting a certain police officer to testify to various articles being found in the room occupied by plaintiff in error Waranowski at the time he was arrested. The fact was that certain articles, consisting of rings and a clock, were testi-

fied by this police officer as having been found in Waranow-ski's room at the time he was arrested, but the ruling of the court was that they were only admitted as to Waranow-ski and Straka, who roomed at the same place. While the rings and clock should not have been introduced in evidence and displayed before the jury, we do not think their admission on this record was reversible error. The police officer who testified as to these stolen articles volunteered the information as to the other property, and when any of this testimony was objected to, the objection was sustained by the court. The testimony as to this other property was apparently volunteered by the officer and was admitted without objection.

It is also argued that too many instructions were given on the question of reasonable doubt. Four were given for the People and one for the plaintiffs in error, although several of plaintiffs in error's instructions referred to the fact that they could not be convicted unless they were proven guilty beyond a reasonable doubt. We do not think the instructions in this case were of such a nature as to come within the reasoning of this court on that subject in *People* v. *Wallace,* 279 Ill. 139, *People* v. *Ahrling,* 279 id. 70, and *People* v. *Fox,* 269 id. 300. While we adhere to what was said in those cases on voluminous instructions as to reasonable doubt, a mere redundancy of instructions as to reasonable doubt will not always be ground for reversal. *People* v. *Cotton,* 250 Ill. 338; *People* v. *Snyder,* 279 id. 435.

We find no rulings of the trial court that could be fairly said to have misled the jury to the prejudice of the plaintiffs in error. The evidence fully justified the verdict as to the guilt of both plaintiffs in error.

The judgment of the criminal court of Cook county will be affirmed.

*Judgment affirmed.*