(No. 27940.—<span></span>

The People of the State of Illinois, Defendant in Error, *vs.* Joseph R. Shelton, Plaintiff in Error.

*Opinion filed Sept. 19, 1944—Rehearing denied Nov. 20, 1944.*

JESSE R. BROWN, and PERRY H. HILES, both of Edwardsville, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, and C. W. BURTON, State's Attorney, of Edwardsville, (FRED P. SCHUMAN, of Granite City, of counsel,) for the People.

Mr. CHIEF JUSTICE FULTON delivered the opinion of the court:

Plaintiff in error, Joseph R. Shelton, whom we will hereinafter refer to as defendant, was jointly indicted, in the circuit court of Madison county, with two other young men for the crime of rape. There were two counts in the indictment, the first alleging forcible rape and the second charging carnal knowledge of a female under the age of

sixteen years, or statutory rape as it is generally referred to. Defendant pleaded not guilty to both counts and had a separate trial before a jury. At the close of all the evidence a *nolle prosequi* was entered as to the first count but the jury found defendant guilty of assault with intent to commit rape under the second count. Motions for a new trial and in arrest of judgment were overruled whereupon the court sentenced defendant to serve an indeterminate sentence of one to fourteen years and further fixed the minimum and maximum limits of imprisonment at two and four years, respectively. The record is before this court for review upon a writ of error.

The facts out of which this case arose are as follows. On the evening of August 17, 1943, defendant, aged 19 years, and his friend, James D. Schmidt, aged 18 years, drove in the latter's car from Collinsville, Illinois, to nearby St. Louis, Missouri, and there boarded the excursion steamer, Admiral, for a pleasure ride on the Mississippi river. The boat left the dock at nine P. M. and returned about midnight. On this trip they met several girls, among them the prosecutrix herein, aged 14 years. Defendant Shelton was with her during part of the evening, drinking, talking and dancing. The complaining witness had come on the boat with four other older girls, all of whom lived in Granite City, Illinois, a city several miles northwest of Collinsville. During the course of the evening she had several drinks of whiskey in highballs and then imprudently took a bottle of whiskey and drank all of the remaining five or six "shots" contained therein.

When the excursion boat docked at the landing in St. Louis, the prosecutrix was intoxicated to such an extent that she could not walk, so defendant and Schmidt carried her off the boat to Schmidt's car during which time they lost contact with the other girls. Upon nearing the car they met one George J. Montgomery, a soldier, who wanted a ride to his post, near which they happened to be going.

After placing prosecutrix in the back seat of the car, the three young men got in the front seat and Schmidt drove over the bridge into Illinois, heading for Granite City.

As to what happened during the next four hours there is conflict in the testimony. Both Schmidt and Montgomery testified that immediately after they passed the toll-house of the bridge, defendant climbed into the back seat of the car and had intercourse with the complaining witness one or more times. They also related conversations with Shelton later that night which, if true, would prove his misconduct. Defendant took the stand in his own behalf and testified that he was in the back seat for only a few minutes but that was to help Montgomery place prosecutrix back on the seat from which she had fallen. The defendant admitted several other things which we do not deem proper or necessary to repeat here, suffice to say the same clearly indicated a desire and purpose on his part to accomplish the act charged. However, defendant while on the witness stand denied attempting to have, or actually having, intercourse with the prosecutrix. Montgomery admitted that he had intercourse with complaining witness, but Schmidt denied any such improper conduct on his part. The three young men all testified that after reaching Granite City they drove around several hours while attempting to sober up the prosecutrix and learn her home address. Finally they located her house where they left her on an outside porch at four A. M., still in a drunken stupor.

The prosecutrix remembered nothing which happened from about eleven o'clock while on the boat until 6:30 the next morning when she awoke in her own bedroom to which she had been taken by her mother. The mother testified that her daughter left home the previous evening with clean, neat clothes and in good health, but that she found her with clothes torn and stained, her hair full of dirt and grass, her right eye black and blue, and her lips swollen. All items of clothing were introduced in evidence

in the condition as found by the mother. A Dr. Wiesman made an examination later the same day and testified that he found her in a dazed stuporous condition with the same physical marks as related by the mother. In addition, the doctor gave the opinion that the prosecutrix had had intercourse during the previous night. A written confession signed by defendant five days after the occurrence in question was admitted in evidence. In conclusion, defendant called several witnesses to testify to his good reputation for chastity and morality in the community.

Defendant's assignment of errors contains twenty-nine specifications, but as argued in his brief these fall into eight groups which we will discuss accordingly.

First to be considered is whether there was a misjoinder of parties and a misjoinder of offenses in the same count of the same indictment. Defendant claims there is a misjoinder of offenses in this case because three persons are jointly indicted for rape under the same count and one of the parties dismissed, another found guilty and the third found guilty of assault with intent to commit rape. To sustain this contention defendant relies on *People* v. *Richie,* 317 Ill. 551. That case has been distinguished many times by this court in answer to the same argument. Thus, in *People* v. *DeStefano,* 332 Ill. 634, it was said: "The facts in that case are not similar to those in the car at bar. The crimes charged there occurred at different times and places. * * * Where the defendants charged with the crime are shown to have a common design to commit it, all will be held guilty. (*People* v. *Powers,* 293 Ill. 600.). While a crime of the character here charged cannot be committed by all defendants at the same time, yet where the evidence tends to show a concert and agreement in purpose and action the People may proceed against them all under one indictment." The same principles apply here. All three boys were in the car during the time when the testimony shows at least two of them committed the act against com-

plaining witness. They obviously had a common purpose, design and intention and none did anything to protect the girl or relieve himself from blame for participating in the orgy. The situation is not changed by the fact that a *nolle prosequi* upon both counts was entered as to Schmidt and a sentence imposed on Montgomery upon his plea of guilty; those were matters of procedure. *People* v. *Meyers,* 381 Ill. 156.

It is next argued that Dr. Wiesman should not have been permitted to testify that "It is my opinion that the child had had intercourse sometime during the previous night; probably not longer than two hours previously." While this is not the accepted form for such opinion evidence, it falls far short of the statement, "I think it was a case of rape" which was held improper in *People* v. *Schultz,* 260 Ill. 35. A better phrasing would have been that the conditions or injuries found "could have been caused by sexual relations with a male" as was approved in *People* v. *O'Connor,* 295 Ill. 198, *People* v. *Ardelean,* 368 Ill. 274, and *People* v. *Arendarczyk,* 367 Ill. 534. However, we believe no reversible error was committed in this respect.

Defendant relies upon *People* v. *Arnold,* 248 Ill. 169, as authority for the proposition that it was error to admit in evidence the soiled and torn clothing of prosecutrix inasmuch as the condition thereof was not shown to be the result of any act of defendant. The facts in the *Arnold case* were much different because there the bloodstained garment had no tendency to prove any fact except that a hemorrhage occurred, which was not in controversy. Here, the defendant denied from the witness stand any act connecting him with the crime of which he was convicted and the clothing at least tended to prove a circumstance to be considered by the jury along with all the other evidence. *People* v. *Bakutis,* 377 Ill. 386.

Error is further urged in that James D. Schmidt was called as the court's witness upon the suggestion of the

State's Attorney that he was jointly indicted with defendant and the prosecution did not want to vouch for his testimony. While a stronger showing of necessity might have been required, we believe the facts here warrant the application of the rule stated in *People* v. *Rongetti*, 344 Ill. 278, as follows: "The rule in such cases, as frequently announced by this court, is, that where there is an eyewitness to the crime whose veracity and integrity the State's attorney may doubt, he is not obliged to call such witness but the court may call him and permit cross-examination by either side, such cross-examination to be limited to the issues involved and kept within proper bounds. (*People* v. *Rotello*, 339 Ill. 448; *People* v. *Cardinelli*, 297 id. 116; *People* v. *Curran*, 286 id. 302; *Carle* v. *People, supra* [200 Ill. 494].)"

In the cross-examination of Schmidt by defendant's attorneys, he was interrogated at length as to whether any agreement had been made with the State's Attorney's office that in consideration of his testimony the case would be dismissed as to him. Later Harold Bandy, attorney for Schmidt, was called to the stand by the State and examined concerning any such agreement. Over the objection of defendant he was permitted to testify that he told the State's Attorney that in his opinion if Schmidt was called to the stand he would state the facts, whereupon the State's Attorney said if Schmidt did that he would dismiss the case as to him. Defendant complains that it was error to admit this proof over his objection. There is no evidence in the case connecting Schmidt with the crime charged except that he was present. Furthermore, the jury apparently refused to follow Schmidt's statement inasmuch as he testified that the defendant committed the more serious crime of rape.

In the light of the examination by defendant's attorneys and the other circumstances surrounding the case, we do not believe that the defendant was prejudiced by Bandy's

testimony and the admission of the same was not reversible error in this case.

Five character witnesses were called by defendant and he contends that reversible error was committed in the striking of certain parts of their testimony. The record does not bear this out. For example, after two witnesses merely stated that they had known defendant for several years, their testimony that his reputation for chastity and morality was good was then stricken for lack of proper foundation. This was proper because, as pointed out in *People* v. *Reeves,* 360 Ill. 55, reputation testimony must be based on the witness's knowledge through contact and association with the defendant's neighbors or friends, not on a mere acquaintance removed from all such factors. When these same two witnesses, as well as the other three, showed that they had known defendant for some time and came in contact with his friends and associates their opinions were permitted to stand even though they had not discussed his reputation for chastity and morality nor heard anything bad about him. In this latter respect the trial court gave full latitude to the rules announced in *People* v. *Okopske,* 321 Ill. 32, and *People* v. *Huffman,* 325 Ill. 334.

The introduction in evidence of the signed confession of defendant is objected to on the grounds, (1) that he was not first advised that it might be used against him, and, (2) that he did not read it or hear it read before signing. No contention was made that the confession was obtained by threats or promises of reward. The law on this subject matter is well defined in many cases, such as *People* v. *Goldblatt,* 383 Ill. 176, where it was said: "A confession is regarded as voluntary when it is made of the free will and accord of the accused without fear of any threat of harm or without promise or inducement by hope of reward. It need not be spontaneous and it is not necessary that it be wholly made upon the suggestion of the accused. A confession is not rendered inadmissible by the

mere fact that it was elicited by questions put by police officers or others or by the fact that the accused was exhorted to tell the truth. Nor does the mere fact that a confession was made while in the custody of the police render it inadmissible. It is not necessary that the accused be warned that the confession might be used against him. *Wilson* v. *United States,* 162 U. S. 613; *People* v. *Fox,* 319 Ill. 606." Thus, there is no merit to the first part of this objection.

Nor would the court have been justified in refusing to admit the confession on the second basis. We have inspected a photostatic copy of it and find it to be in a large, full and legible hand extending over five pages of ruled, legal-size paper. According to the testimony it was written by an assistant State's Attorney as he interrogated defendant in the presence of a deputy sheriff. Defendant signed at the end, and on the left-hand margin of each sheet wrote "O.K.—Joe Shelton—August 23/43." He also initialed minor corrections in spelling and additions at several places on three different sheets. The deputy sheriff witnessed each page and testified that defendant read it over before he signed it, at the same time pointing out the errors in spelling which he initialed. The jury heard all this testimony after it was first given in a preliminary hearing before the court and was in a position to determine the credit to be given it.

As to instructions, defendant's principal objection is directed at number 6 given by the State, which defines assault with intent to commit rape. The form of the instruction is not objected to but rather defendant contends that it should not have been given at all because, if the defendant is guilty of anything, he is guilty of rape. He cites *People* v. *Lewis,* 252 Ill. 281, as authority for this contention. That case did hold that such an instruction should not have been given there because the evidence, if believed, was conclusive that intercourse had occurred and

the jury could have returned no other verdict than guilty of rape if it believed the act was forcible and against the will of the woman, who was over the age of consent. In the instant case, however, there was some testimony by Schmidt and Montgomery as well as parts of defendant's confession which, if believed, would prove defendant guilty of no more than an assault with intent to commit rape. Obviously, therefore, the instruction was based on facts and was proper. (*People* v. *Moore*, 276 Ill. 392; *People* v. *Jasinski*, 334 Ill. 385.) Furthermore, proof of the more serious charge of rape, which was also made in this case, includes proof of the lesser offense of which defendant was convicted. *People* v. *Ristau*, 363 Ill. 583; *People* v. *Cox*, 340 Ill. 111.

Other objections relate to refused instructions upon the weight to be accorded the testimony of an accomplice and the consideration which the jury should give because of the gravity of the charge. These matters were fully and properly covered by other given instructions, whereby the following rule stated in *People* v. *DeRosa*, 378 Ill. 557, is applicable: "A particular instruction need not contain all the law either of the case or upon a given subject. It is sufficient if the series of instructions, considered as a whole, fully and fairly announces the law applicable to the theories of the People and of the defendant, respectively."

Finally, defendant contends that remarks were made by the trial judge and the State's Attorney which were improper and prejudicial. To detail the various challenged statements would unduly prolong this opinion inasmuch as we have examined the same in the record and find none to be so serious as to constitute reversible error. No doubt the case could have been better tried without some of the remarks but they were fully offset by defendant's own counsel. On the whole, we are satisfied that the defendant had a fair trial and was, in fact, leniently treated by the jury whose verdict he does not challenge for insufficiency

66

of evidence. Under these circumstances, the following pronouncement in *People* v. *Booker,* 378 Ill. 334, as well as many other decisions of this court, is quite appropriate: "The object of a review is not to determine whether the record is free from error, but to ascertain whether a just conclusion has been reached, founded upon competent and sufficient evidence after a trial in which no error, prejudicial to the defendants' rights, has occurred."

The judgment of the circuit court of Madison county is affirmed.

*Judgment affirmed.*