(No. 33891.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LEONARD DOGODA, Plaintiff in Error.

*Opinion filed September 25, 1956.*

T. RENFROE EATON, of Chicago, for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and JOHN GUTKNECHT, State's Attorney, of Chicago, (FRED G. LEACH, EDWIN A. STRUGALA, IRWIN D. BLOCH, JOHN T. GALLAGHER, RUDOLPH L. JANEGA, WILLIAM L. CARLIN, and JOHN J. STAMOS, of counsel,) for the People.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

After a nonjury trial in the criminal court of Cook County, the defendant, Leonard Dogoda, was found guilty of attempted burglary and sentenced to a term of one to three years in the penitentiary.

The indictment charges that the defendant attempted to break and enter a certain store building in Chicago belonging to the National Tea Company, with intent to steal,

take and carry away personal property of the company; that he did certain overt acts toward the commission of that offense; and that he was intercepted and failed.

The record for the prosecution contains the evidence of the lawyer who incorporated the company, the store manager, three police officers, an unsigned statement allegedly made by the defendant, and stipulations as to his age and a prior conviction. For the defense, the defendant and his employer testified.

At 6:00 P.M. on November 2, 1954, all of the doors and windows of the store were locked and intact. However, on the following morning the rear doors were found to have been "chewed" as if something had gnawed on the wood, wood splinters were scattered around, one step-down bolt was torn out, and a brace was bent out straight.

Three police officers, in a squad car dispatched to the scene at 2:30 A.M. on November 3, 1954, saw two men walking out of an alley behind the store and cutting through a station lot and driveway in a direction toward the officers. The officers stopped the car, jumped out, yelled "stop, police officers," and, as the men started running, fired three shots in the air. One of them, the defendant, was apprehended some distance away and taken to the police station. Upon returning, the officers found the tampered rear doors. One of them said he saw marks on the doors "as would be made by a crowbar."

Another police officer who investigated (in a different car) told of finding a "2 x 4" wedged in the center crack between the two rear doors of the store. At dawn he went back to the scene and found two crowbars hanging on a fence about 50 feet away.

A statement of the questions asked the defendant and his answers disclose that he and a person he knew as Andy were at a tavern from 9:30 to 11:00 P.M. on the night in question, then went to another tavern, and finally to a third. Afterward, they walked east on Sixty-third Street

"where the store was located which we made an attempt to break into." They found two "2 x 4s" in an open lot nearby and used these in an unsuccessful effort to pry open the doors. As they were leaving, the police arrived. They started running, heard shots fired, and shortly thereafter the defendant was caught.

The statement negates any coercion or inducement and shows voluntary character, and, in answer to the final question whether he would sign, gives the defendant's answer as "I'm not saying until I consult my attorney."

The defendant, on the stand, said he played cards at home until 7:30 or 8:00 P.M. and then left for a tavern. He left there about 10:30 P.M. for another tavern, and then to another. By this time he had "had plenty." He said that when he and Andy were on Sixty-third Street near the corner, they saw two squad cars, heard somebody shout "halt" and also heard shots fired. They got panicky and started to run. Since he had been picked up before, he said he wanted to avoid any time in jail and save the money involved in an arrest. He denied being behind the store or in the alley, attempting to pry open the doors and possessing the crowbars or "2 x 4s." Finally, he refuted the statement, saying it wasn't true beyond the point where he made a correction on his brother's name.

The defendant contends as follows: (1) The evidence is so unsatisfactory as to require a reversal. (2) The statement, containing matters contrary to known facts, unsigned, unsworn, denied and taken while he was under alcoholic influence, is insufficient to support the conviction. (3) It was error to admit the tools not shown to have been in the defendant's possession. (4) There was no proof of any personal property in the store, much less any proof of ownership. (5) The indictment and evidence did not establish the value of the property as being more than $50.

The first two contentions may be considered together. For without the statement there is nothing to connect the

defendant with the physical evidence found at the scene and implicate him in the crime; but the statement, if taken as admitted and believed, eliminates any reasonable doubt of guilt when considered with other facts of record.

The statement need not have been sworn to be admissible; and since the police officer who took it testified that it was a true and correct transcript of the questions and answers, it was not necessary that it be signed. (*People* v. *Gukouski,* 250 Ill. 231.) The defendant does not deny having made a statement before an officer who typed it, nor does he deny that the statement submitted was taken by that officer. He does refute part of it, for on his direct examination in answer to a question put by his own counsel, he said "that statement wasn't true beyond the point where I have made a correction on my brother's name." But it is significant that this point in the statement *follows* these incriminating answers: that while his alleged accomplice was prying on the door with a "2 x 4" the defendant was pushing on the door so he could get his "2 x 4" in better; that his intentions after gaining entry were probably to take something; and that his intentions were, regarding the merchandise he would have taken, to "sell it I suppose."

While the defendant does not assert that the statement was coerced, he does claim that it was vitiated by drunkenness on his part. This poses a fact question, opposing the defendant's word to that of the arresting officer regarding his sobriety or degree of intoxication and necessitating a consideration of other relevant matters. It was for the trial court sitting without a jury to resolve this issue, and there is ample support in the record for its determination.

The defendant next objects to the admission in evidence of the crowbars and the "2 x 4s." However, they were found in close proximity to the scene of the crime, and in his statement the defendant acknowledged that he and his accomplice used tools of this nature in their attempt to

enter the building. Under these circumstances, the evidence was properly admitted.

The defendant's next contention is that there was no proof of any personal property in the store, much less any proof as to the ownership of such possible property. Actually, it is true that there was no direct proof of such, although it might well be inferred from the mere proof concerning the grocery store building that there were groceries inside. However, it is unnecessary to indulge this inference. An attempt is a crime that falls short of completion through means other than the defendant's voluntary relenting, (*People* v. *Lardner,* 300 Ill. 264,) and where the attempt is to burglarize a building, with intent to commit larceny, one form of frustration would be the absence of property in the building. The larceny attempt cases are analogous. See *People* v. *Moran,* 123 N.Y. 254, *Com.* v. *McDonald,* 5 Cush. (59 Mass.) 365, *People* v. *Jones,* 46 Mich. 441, and *State* v. *Wilson,* 30 Conn. 500, all sustaining convictions on fruitless dips into empty pockets.

Finally, the defendant argues that an attempted burglary cannot be based on an intent to commit petty larceny (i.e., property valued at less than $50.) He points to the attempt statute which reads "with intent to commit the crime of murder, rape, robbery, larceny or other felony." (Ill. Rev. Stat. 1953, chap. 38, par. 85,) and insists that the word "larceny" used therein refers to that larceny which is a felony, but excludes that which is only a misdemeanor.

This argument, basically *ejusdem generis,* is not persuasive. To determine whether the larceny in the foregoing statute includes petty larceny (a misdemeanor), as well as grand larceny (a felony), we look to the larceny statute. There larceny is defined as including both. The "other felony" mentioned in the attempt statute refers to other crimes of that degree; but the mere position of the word

"larceny" in the series of words does not require us to rule out misdemeanor larceny as a crime, the intent to commit which may be the subject of an attempt. This was the holding in *Kelly* v. *People,* 132 Ill. 363, 367-8, as regards assault with intent to commit "murder, rape * * * larceny or other felony," an assault to commit such crime being made out on proof of assault to commit petty larceny. The language of that case applies here: "Whether the value of the goods stolen is more than $15.00, or just $15.00, or less, in either case the crime is larceny."

For the reasons stated, the judgment below is affirmed.

*Judgment affirmed.*