(No. 35213.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOE PERKINS, Plaintiff in Error.

*Opinion filed November 18, 1959.*

FRANK G. URIELL, of Chicago, for plaintiff in error.

GRENVILLE BEARDSLEY, Attorney General, of Spring-field, and BENJAMIN S. ADAMOWSKI, State's Attorney, of Chicago, (FRED G. LEACH, and WILLIAM H. SOUTH, Assistant Attorneys General, and FRANCIS X. RILEY, and JAMES J. GLASSER, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE DAVIS delivered the opinion of the court:

Joe Perkins, herein called defendant, and Farleigh Gray were indicted in the criminal court of Cook County for armed robbery. Defendant was found guilty after a separate trial before the court and was sentenced to the penitentiary for a term of not less than 8 nor more than 15 years. He prosecutes this writ of error to review the judg-

ment of conviction, contends that the evidence did not establish his guilt beyond a reasonable doubt, and that the trial court erred in the admission of certain evidence.

The evidence offered by the People established that on the evening of March 29, 1958, at about 8:55 P.M. two men entered the store of Prince Ice Cream Castles, Inc., located at 12640 South Western Avenue in Blue Island. At that time, Loretta Gadde, the store manager, and Jean Corson, an employee, were placing ice cream in a cabinet at the front of the store, while Virginia Karchner, another employee, was in the rear of the premises. The men entered the store and were behind Mrs. Gadde and Miss Corson when one of them announced that "this is a stick up."

One of the men held a shiny nickle-plated revolver in his right hand which he pointed at Mrs. Gadde. This man, later identified as the defendant, ordered both women to go behind the counter and requested Mrs. Gadde to open the cash register. While she was so doing, Miss Corson stood beside her and watched the gunman.

After the robber removed the money from the cash register, he ordered Mrs. Gadde to produce the key to the safe and open it. When the safe was opened, he removed its contents and forced both women to lie upon the floor at the rear of the store. The men then departed with about $235 which was the property of Prince Ice Cream Castles, Inc.

The police were notified and Mrs. Gadde and Miss Corson described the robbers as colored men about 20 to 23 years of age and of medium height and build. Miss Corson also told the officers that the gunman had a bandage on his right hand and that the man who acted as a lookout wore a brown hat and blue jacket. At the trial she testified that she did not recall furnishing the police with a description of the clothing worn by the man with the gun but stated it was her recollection that he wore a black cap and a jacket.

The defendant and Gray were arrested by Donald Share,

a police officer of Chicago Heights, on April 7, 1958. Share, who had been given a description of the men who committed the robbery, arrested them when the automobile in which they were riding exceeded the speed limit. They were taken to the police station and questioned separately concerning this robbery and other matters.

Share testified that upon arrest defendant denied any knowledge of the robbery; that on April 8, Miss Corson identified the defendant and Gray as the robbers from a line of five colored men who were viewed by her; and that Mrs. Gadde, who was also present, failed to identify either of the men. He also related that on April 9, after the line-up and identification, the defendant made an oral confession in which he stated that on the day of the robbery he and Gray had gone to Chicago to redeem his car which had been repossessed; that on their return to Chicago Heights they passed through Blue Island where they observed the Prince Castle store, and there was some conversation about it being an easy place to "stick up;" and that on the same evening, while Gray was driving defendant's car, they returned to Blue Island and parked around the corner about half a block from the store.

Share further testified that defendant told him that Gray had a .32 caliber revolver but "turned chicken" as they approached the store and told him that he couldn't pull a gun on anybody, whereupon defendant took the gun as they entered the store; that defendant brandished the weapon and announced a "stick up" after which they cleaned out the cash register and safe, forced the women present to lie on the floor and departed; and that they drove back through Harvey to Chicago Heights where they divided equally the proceeds of the robbery. He also stated that defendant told him that the gun was hidden in his grand-mother's basement, but that it was actually found in the home of Gray's sister; and that he showed the gun to

defendant who stated that it was "Farleigh's gun." This was the gun which was introduced in evidence.

. Share's testimony concerning defendant's verbal confession was corroborated by Ezell Irons, another police officer. Both testified that Share prepared the written confession in question-and-answer form based upon what defendant had previously told them but that defendant refused to sign it. Irons testified that defendant was not allowed to see his girl friend who brought food to him at the police station and that this motivated the refusal. Share testified that the writing did not include all of the questions and answers of the oral confession.

Both officers were extensively cross-examined concerning the taking and preparation of the confession, which was allegedly reduced to writing at 4:00 P.M. In this connection, defense counsel had Share identify a signed statement purportedly taken from Gray on the same day at 4:15 P.M. which was marked for purposes of identification as defendant's exhibit 1. People's exhibit 1, the revolver, and People's exhibit 2, purporting to be defendant's unsigned written confession, were admitted in evidence, over objection, and defendant's exhibit 1, as well as a certain receipt, hereafter mentioned and designated defendant's exhibit 2, were also admitted.

Defendant was the only witness in his own behalf. He denied any knowledge of or participation in the crime and denied making any statement to Share or anyone concerning this robbery. He related that he told those who questioned him that he knew nothing about it, but remembered being in a room with Share who was asking him questions and typing them, together with the answers he gave. However, he contended that those related to another charge. He said that he had been questioned about this and other crimes, but that he had never admitted "this crime;" that he had neither seen nor been asked to sign the purported

written confession; that he knew that his girl friend had brought food to him; that he had not been allowed to see her; and that he denied refusing to sign for that reason.

Defendant also stated that he was riding in his 1949 Ford at the time of his arrest, admitted that his car had been repossessed, but claimed that he got it back March 30 or 31, and not on the 29th. He testified that he had a receipt for it which was produced and received in evidence. It was dated April 7, 1958, and recited the payment of $30 on a 1950 Ford automobile. In explaining the receipt, defendant testified that the seller, who repossessed the car, had it about two weeks; that he got it back only after paying the $30 and securing the receipt.

Gray's signed statement was offered for the purpose of showing the "time element" only, but the entire statement was offered and received without objection. In it Gray confessed that he and defendant committed the robbery. The details related are almost exactly the same as those given by witnesses Share and Irons in their testimony concerning defendant's alleged verbal confession.

In a criminal case, "the burden of proof rests upon the People not only to prove beyond a reasonable doubt the commission of the crime charged, but also to establish by the same degree of proof the perpetration of the crime by the person accused." (*People* v. *Davis,* 14 Ill.2d 196; *People* v. *Kidd,* 410 Ill. 271.) Defendant does not deny that the proof established beyond a reasonable doubt that the crime of armed robbery was committed at the time and place in question, but urges that the evidence fails to prove his guilt of the crime as required by law.

The record shows, however, that Miss Corson, one of the victims of the robbery, positively identified the defendant as the man who held the gun, both in a line-up shortly after his arrest and at the trial. The testimony of one witness as to identification, if positive and the witness credible, is sufficient to convict even though the testimony

is contradicted by the accused. *People* v. *Burts*, 13 Ill.2d 36; *People* v. *Williams*, 12 Ill.2d 80; *People* v. *Wilson*, 1 Ill.2d 178.

The defendant stresses that Mrs. Gadde failed to identify him, either at the line-up or the trial. The fact that some of the persons present fail to identify the accused as the perpetrator of the crime does not require a reversal. (*People* v. *Crenshaw*, 15 Ill.2d 458.) The record clearly shows, however, that Mrs. Gadde's opportunity of observation was not equal to that afforded Miss Corson. Her attention was devoted to opening the cash register, producing the key and opening the safe, while Miss Corson was in a position to watch the robbers and to observe everything that happened during the entire transaction which covered a period of about five minutes. Under these circumstances, her identification of the defendant was entitled to great weight. The fact that she did not recall having given the officers a description of the clothing worn by defendant at the time of the robbery did not materially affect her credibility as a witness or render her testimony unworthy of belief.

The evidence of identification was also supported by the testimony of the police officers concerning the confession by defendant of his part in the crime. Defendant argued that their testimony was so inconsistent and uncertain as to render it unworthy of credence, but the record shows that their testimony concerning the details of defendant's purported verbal confession is consistent in all material respects. The only inconsistency or uncertainty relates to the time at which defendant's confession was made. This might affect the weight to be given this portion of the proof, but would not require the trial court to disregard it entirely.

Defendant and others were questioned at intervals over a period of three days. He first denied any knowledge of the crime, then, after identification, made the verbal con-

fession. However, the record indicates that defendant, even then, did not furnish all the details of the crime. These were given only after others had been separately questioned and the defendant implicated. In view of these circumstances, any inability on the part of the officers to fix an exact time when the confession might be said to have been complete in all its details is understandable.

The oral confession, consisting of statements attributed to defendant up to that time, was reduced to writing at 4:00 P.M. on April 9, by officer Share. This was the document, incomplete as to certain details of the crime, which defendant refused to sign. While incomplete, defendant therein admitted his implication in the crime charged. It corroborated, in part, the testimony of the officers as to defendant's oral confession.

Defendant does not argue that the written confession was inadmissible because unsigned or that it was incompetent for any reason. He contends rather, that it was so lacking in details that it was not a confession of guilt. Officer Share testified that the writing was a true and correct transcript of the questions asked and answers made by defendant. With that foundation it was admissible, if relevant and material, even though it was unsigned. (*People v. Berryman*, 13 Ill.2d 229, 231; *People v. Dogoda*, 9 Ill.2d 198, 202.) It was both relevant and material.

When a jury has been waived, it is the province of the trial court to determine the weight and credibility of the testimony, to resolve the conflicts therein, and to make its findings of guilt or innocence. In view of the opportunities of observation enjoyed by the trial court, its judgment should not be set aside by this court unless the proof is so unsatisfactory as to justify a reasonable doubt of defendant's guilt. (*People v. Crenshaw*, 15 Ill.2d 458; *People v. Davis*, 14 Ill.2d 196.) The evidence relative to the identification of defendant, together with the testimony of the officers as to his confession, established his guilt beyond a

reasonable doubt, even in the face of his denial of participation in the crime.

Defendant testified, yet he offered no explanation as to his whereabouts at the time the crime was committed. In an effort to show that the officers were mistaken when they said his car had been redeemed on the 29th of March, he testified that his automobile was a 1949 model and that it had been redeemed on the 30th or 31st. He then produced a receipt dated April 7, showing payment on a 1950 Ford and said that the car had not been reclaimed until the payment had been made and the receipt given. The inconsistency and untruthfulness of his testimony is apparent.

Defendant finally contends that the People failed to establish any connection between him and the gun which was admitted in evidence and that this constituted reversible error. He cites *People* v. *Smith,* 413 Ill. 218, for the general rule that to warrant the admission of a weapon in evidence it must be shown to have been in the possession or under the control of the accused. The applicability of this rule to the instant case is not denied. Miss Corson testified that the gun produced at the trial had the appearance of the one held by defendant at the time of the robbery. Officer Share testified that defendant told him that the gun used in the robbery belonged to Gray, but that he had used it when Gray "turned chicken." The officers recovered the gun produced at the trial from the home of Gray's sister upon information obtained during the questioning. Share testified that when he showed this revolver to defendant at the police station, he stated that it was "Farleigh's gun."

At the trial, defendant admitted that he knew Farleigh Gray and it is undisputed that they were together at the time of their arrest. This record is sufficient to identify the gun produced at the trial as the one actually used in the crime. *People* v. *Maciejewski,* 294 Ill. 390; *People* v. *Sobzcak,* 286 Ill. 157.

Since the evidence established the guilt of defendant

beyond a reasonable doubt and the record is free of prejudicial error, the judgment of the criminal court of Cook County will be affirmed.

*Judgment affirmed.*