128

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HAROLD CONWAY, Defendant-Appellant.

(No. 53607; )

First District—January 18, 1971.

Gerald W. Getty, Public Defender, of Chicago, (James N. Gramenos, Assistant Public Defender, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and James W. Reiley, Assistant State's Attorneys, of counsel,) for the People.

Mr. PRESIDING JUSTICE BURKE delivered the opinion of the court:

Defendant was found guilty at a bench trial of the crime of armed robbery and was sentenced to a term of five years to ten years in the penitentiary. He appeals.

Mr. Victor Vazquez testified that on February 23, 1968, he was employed as a bartender in a tavern located in the 3900 block of West Chicago Avenue in Chicago. At 9:30 or 10:00 A.M. on that day, a man, who Vazquez later identified as the defendant, entered the establishment and remained about one hour, drinking and playing pool. The witness testified that defendant spoke to him, and that prior to his leaving the tavern defendant left behind a paper napkin on which he had written the name either "Carl Conway" or "Harold Conway." Upon leaving the premises the defendant stated to the witness that he would return.

Vazquez testified that defendant returned to the tavern about 5:30 that evening. He walked to the rear of the establishment, put a gun to the witness' stomach and ordered him into the washroom where he took the witness' wallet, wristwatch and hat. Finding no money in the wallet, the defendant put the gun to the witness' head and stated, "This is a stick up, give me your money or I will kill you." The witness then reached into his pocket and removed about $175 belonging to his employer which he gave to the defendant.

Defendant then pushed Vazquez out of the washroom and into the

middle of the tavern where he announced a hold-up of the tavern's patrons. The cash register was emptied and the defendant fled.

The police were summoned and Vazquez and a patron, Mr. Santiago, gave a description of the defendant. The defendant was arrested about an hour later at the apartment of a friend. At approximately 6:55 P.M. that evening Vazquez and Santiago were transported to police headquarters where they both identified the defendant out of a four-man line-up. Vazquez also identified a wristwatch, seized from the defendant upon his arrest, as the one taken by the defendant in the hold-up. Both witnesses also identified a gun which had been seized from the apartment where the defendant was arrested as being similar to the weapon used by the defendant during the hold-up. Defendant had $131 on his person when he was arrested.

For the defense Mrs. Callie Brown testified that she was the owner of a building located on the west side of the city and that defendant rented a sleeping room in the building. She testified that she returned home about 4:00 P.M. on the day in question and that defendant was asleep in one of the bedrooms. She testified that she left the building at 5:10 or 5:15 P.M. in order to catch a 5:30 P.M. train to visit her daughter in the hospital and that the defendant was still in the house asleep when she left.

Defendant testified in his own behalf and stated that he slept until 8:30 A.M. on the day in question; that he watched television until 11:00 A.M.; that he then went to his place of employment to pick up his wages of $96; that he returned home at noon to let Mrs. Brown's grandchildren into the house for lunch; and that he left the house again between 1:30 and 2:00 P.M., proceeded to a local liquor store where he purchased liquor and returned home. The defendant testified that he then consumed the liquor and fell asleep. When he awoke he went to a tavern located at Sacramento and Carroll Streets where he consumed more liquor and played the pinball machine. He testified that he then proceeded to an apartment located at 133 North Sacramento Street to visit a friend.

Upon his arrival at the apartment, the defendant was greeted by his friend's husband and several other persons on the stairway of the apartment. Defendant testified that an argument ensued between him and his friend's husband, that blows were struck, and that the police arrived and placed him under arrest.

The arresting police officer testified that he recovered the gun in question from a lounge chair in the apartment at 133 North Sacramento Street and that when the officer first arrived at the scene defendant was standing at the top of the stairwell leading to the apartment.

A motion was made to suppress the identification testimony, and after a hearing, the motion was denied.

Defendant initially contends that he did not knowingly and understandingly waive his right to a trial by jury. We disagree.

After the case was called for trial defendant's appointed counsel stated that the trial would be had before the court and that the jury was waived. There then ensued a colloquy between the trial court and the defendant concerning the nature of a jury trial and the defendant's right to a trial by jury. After defendant indicated that he wished to be tried by a jury, the court stated that the matter would have to be continued until the following month, at which point the defendant changed his mind and stated that he wanted to be tried by the court. The court told the defendant that he would thereby waive his right to a jury trial and asked the defendant if he was "positive" of his action, to which the defendant replied, "I'm positive of it."

■■ Not only was defendant present when his counsel initially stated to the court that a jury would be waived (*People v. Sailor*, 43 Ill.2d 256, 260,) but the court thereafter explained to the defendant the nature of a jury trial and his right to be tried by a jury. It is clear that the trial court was determined to make defendant aware of his right to a jury trial and also to determine if his waiver of that right was knowingly and understandingly made. (*People v. Alexander*, 45 Ill.2d 53.) It should also be borne in mind that defendant was no stranger to the courts. Since December 1961 defendant had been found guilty and sentenced for four separate crimes; it is apparent that he was not wholly unfamiliar with the nature of the judicial process in this state. *People v. Richardson*, 32 Ill.2d 497, 500.

Defendant states that his constitutional right to counsel was infringed in that he did not knowingly and understandingly waive the right to have counsel present at his pre-trial line-up.

■■ The robbery occurred at approximately 5:30 P.M. on February 23, 1968. Some one and one-half hours later defendant was picked out of a line-up by two eyewitnesses to the robbery, at a time when no indictment had been returned against him in this matter. It has been consistently held that counsel is not required at such preindictment confrontations. *People v. Palmer*, 41 Ill.2d 571; *People v. Cesarz*, 44 Ill.2d 180.

Defendant further contends that the People failed to establish that the in-court identification was untainted by the "illegal" out-of-court identification at the line-up.

■■ The record reveals that the identification of the defendant by eyewitnesses Vazquez and Santiago had an origin independent of the con-

frontation at the line-up. Defendant was in the tavern on the morning of the robbery, drinking and playing pool in the presence of Vazquez for about an hour. As the defendant left, he wrote a name on a napkin and stated to Vazquez that he would return. Defendant did return at 5:30 that evening and had a face-to-face confrontation with Vazquez in the washroom. Likewise, the testimony of Santiago concerning the defendant's actions after he emerged from the washroom and announced a hold-up of the patrons in the tavern clearly indicates that the witness had ample time and opportunity to observe the defendant. Both Vazquez and Santiago gave the police a detailed description of the defendant immediately after the robbery which substantially matched defendant's actual height, weight and wearing apparel. The in-court identification testimony of the two eyewitnesses was admissible for the additional reason that their initial uninfluenced observations of the defendant occurred before and during the robbery. *People v. Nelson,* 40 Ill.2d 146, 150.

There is no support in the record for defendant's contention that the line-up identifications were tainted by the fact that the same officer who transported the witnesses to the line-up also conducted the line-up; there is neither claim nor evidence that there was any improper communication or suggestion between the officer and the witnesses as to the party to be identified from the line-up.

■■ Defendant contends that it was reversible error for the trial court to have admitted the gun into evidence because the gun was not found on defendant's person or within his immediate control, but in the apartment belonging to another party. It should be first noted that no pre-trial motion was made for its suppression as evidence, nor was there any objection made at the time it was introduced into evidence. Defendant has waived his right to complain of this matter on appeal. (*People v. Harris,* 33 Ill.2d 389.) Nonetheless, defendant contends that this court should reverse on this ground under the "plain error" rule. We disagree.

The arresting officer testified that the gun was found on a couch in an apartment which defendant admitted belonged to friends of his. Defendant was observed at the top of the stairwell near the apartment when the police entered the building. Eyewitnesses Vazquez and Santiago identified the gun at trial as being similar to that which the defendant used during the robbery.

In *People v. Perkins,* 17 Ill.2d 493, a gun entered into evidence against the defendant as the weapon that was used by the defendant during the commission of the crime was found in the apartment of the defendant's

accomplice's sister. An eyewitness to the crime stated that the weapon had the appearance of the weapon used during the commission of the crime. Defendant also told the police that the weapon belonged to his accomplice. The court on review held that the weapon was properly admitted into evidence against the defendant.

■■ Similarly in the instant case, the gun was found in the proximate vicinity of the defendant; it was found in the apartment of persons who defendant admitted were his friends; and it was postively identified by two eyewitnesses to the robbery as similar to the weapon used by the defendant in the robbery. The gun was properly admitted into evidence. (See *People v. Gilyard*, 124 Ill.App.2d 95.) In light of the overwhelming evidence of defendant's guilt, it cannot be said that he would not have been found guilty if the weapon had not been admitted into evidence.

Defendant finally contends that he was not proven guilty beyond a reasonable doubt.

■■■ A review of the evidence detailed above clearly reveals that the People's evidence was sufficient to enable the trier of fact to find the defendant guilty of armed robbery beyond a reasonable doubt. As to defendant's alibi that he was home asleep at the time the robbery was in progress, this was a matter of credibility for the trier of fact. (*People v. Oparka*, 85 Ill.App.2d 33.) It is true that Mrs. Brown testified that she observed defendant home in bed when she left the house at 5:10 or 5:15 P.M. on the day in question, but this does not account for his presence at 5:30 P.M. in the tavern when eyewitnesses Vazquez and Santiago testified they observed him in the commission of the armed robbery. The judgment of the trier of fact is not contrary to the weight of the evidence as to justify a reasonable doubt of defendant's guilt. *People v. Nicholls*, 42 Ill.2d 91.

For these reasons the judgment is affirmed.

Judgment affirmed.

LYONS and GOLDBERG, JJ., concur.