THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v.
MICHAEL DAVIS, Defendant-Appellee.

Fourth District   No. 4—87—0577

Opinion filed March 9, 1988.

Donald M. Cadagin, State's Attorney, of Springfield (Kenneth R. Boyle, Robert J. Biderman, and David E. Mannchen, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Daniel D. Yuhas and Leia M. Norton, both of State Appellate Defender's Office, of Springfield, for appellee.

JUSTICE LUND delivered the opinion of the court:

On July 22, 1987, the circuit court of Sangamon County entered an order on the motion to suppress statements made by defendant Michael Davis, finding the statements made were voluntarily given and defendant had been advised of his *Miranda* rights. Accordingly, the court denied said motion. At the same time, the court held that written statements signed by defendant were not admissible since the court found defendant did not understandingly read the statements before signing them. The State appeals the court's ruling denying the admission of these written statements. We reverse.

Defendant was charged with four counts of murder and one count of armed robbery in violation of sections 9—1 and 18—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, pars. 9—1, 18—2). On June 2, 1987, defendant filed a motion to suppress statements, admissions, and/or confessions. The motion alleged that the statements in question should be suppressed because they were not made voluntarily and defendant had not been advised of his *Miranda* rights.

A hearing was commenced on July 13, 1987. The hearing was directed entirely to the subject of the voluntariness of the statements and whether defendant was advised of his *Miranda* rights. The statements in question were given on July 30, July 31, August 1, August 15, and August 16, 1986. The last four were reduced to writing and signed by the defendant. The last statement implicated defendant as being involved in the murder and armed robbery. While the evidence introduced at the hearing was extensive, the only testimony recited here will be that pertaining to the question at hand.

Don Kolar, a Springfield city detective, was involved in the taking of all the statements. He testified the procedure was the same each time. As the defendant was interrogated, Kolar would write out the statement. The statement was not a verbatim question-and-answer statement. Kolar would consolidate the statement and use different wording. When the statement was completed, he would give it to defendant to read and show defendant where to sign and initial the statement.

In each case, defendant appeared to read the statements. Kolar testified he asked defendant before defendant signed them if the statements were accurate, and defendant responded affirmatively.

Detective Thomas Mann was present for several of the statements. After one of the earlier statements was written, he asked defendant to read the statement out loud. He stated defendant was a little bit slow but did a pretty good job of reading. He also observed defendant appearing to read the statements before signing them.

Detective Ralph Harris was present for the last incriminating statement. He testified the written statement was six pages long, and defendant reviewed each page and appeared to read it.

Defendant presented the testimony of a school teacher, a special education teacher, and a school psychologist. This testimony showed defendant has an IQ of 55 to 61, which resulted in his being classified as educable mentally handicapped. He also reads at a second-grade level.

Gary Jackson, defendant's stepfather, was present for one of the statements. He stated he "imagined" defendant read the statement.

Defendant testified he did not read the statements before he signed them. He just signed where the police told him to. He understood that Kolar was writing what he told Kolar. He acknowledged reading a part of a statement out loud but maintained the police had him stop when they found he was a slow reader.

The court found the statements were voluntary, and defendant had been advised of his *Miranda* rights. However, the court found defendant did not read the written statements. The court was concerned that admission of the written statements with defendant's signature on them would create the inference defendant adopted the statements even though the court believed the evidence showed defendant did not understandingly read them. Therefore, the court ruled that the prejudicial effect of defendant's signature on the statements would outweigh their probative value and, accordingly, precluded the State from using the signed written statements. The admission of the oral statements through the testimony of the police officers was not affected. The State filed a certificate of impairment, and this appeal followed.

■ The State contends the court erred since it has been held in Illinois that an unsigned written statement prepared by someone else may be admitted into evidence when the person who wrote the statement testifies it is an accurate transcript of defendant's oral remarks. (See *People v. Perkins* (1959), 17 Ill. 2d 493, 500, 162 N.E.2d 385, 389; *People v. Berryman* (1958), 13 Ill. 2d 229, 231, 148 N.E.2d 745, 746; *People v. Dogoda* (1956), 9 Ill. 2d 198, 202, 137 N.E.2d 386, 388; *People v. Wilson* (1981), 92 Ill. App. 3d 370, 379-80, 415 N.E.2d 1315, 1323.) The State argues that since an unsigned statement is

admissible, then surely a signed statement should be. The State believes this is especially true because defendant's signature and initials would provide greater assurance of authenticity.

However, these cases are factually dissimilar from the present case. In *People v. Dogoda* (1956), 9 Ill. 2d 198, 202, 137 N.E.2d 386, 388, the supreme court held that it was not necessary a statement be signed to be admissible "since the police officer who took it testified that it was a true and correct transcript of the questions and answers." In *People v. Berryman* (1958), 13 Ill. 2d 229, 231, 148 N.E.2d 745, 746, the court held an unsigned statement was admissible since it was proved by the testimony of the court reporter who took it and it bore the initials of the defendant in the margin opposite corrections. Similarly, in *People v. Perkins* (1959), 17 Ill. 2d 493, 500, 162 N.E.2d 385, 389, the court stated: "Officer Share testified that the writing was a true and correct transcript of the questions asked and answers made by defendant. With that foundation it was admissible, if relevant and material, even though it was unsigned." This analysis has been followed in other cases. (See *People v. Hanson* (1964), 31 Ill. 2d 31, 39, 198 N.E.2d 815, 819; *People v. McNeil* (1968), 99 Ill. App. 2d 273, 279, 240 N.E.2d 721, 724; *People v. Wilson* (1981), 92 Ill. App. 3d 370, 379-80, 415 N.E.2d 1315, 1323.) In each case, reference was made to testimony of a court reporter who took the statement or to the fact that the officer writing the statement testified he wrote down the questions and answers.

In the present case, it is clear that the written statements are not transcripts nor contain the actual questions and answers but are paraphrases. We have found no case which authorizes the admission of an unsigned statement which is a paraphrase.

However, there are cases which authorize admission of a statement written by someone other than the defendant if the defendant read it, or the statement is read to him and he then signs it, thus, adopting its contents. (See *People v. Williams* (1962), 26 Ill. 2d 190, 186 N.E.2d 353; *People v. Shelton* (1944), 388 Ill. 56, 57 N.E.2d 473; *People v. Guertin* (1930), 342 Ill. 99, 173 N.E. 824; *People v. Gukouski* (1911), 250 Ill. 231, 95 N.E. 153.) While these cases generally deal with the question of the voluntariness of the statement, there are some helpful parallels to the current situation.

In *Shelton*, the defendant objected to the admission of a signed statement saying he did not read it or hear it read before signing. The court said:

> "Nor would the court have been justified in refusing to admit the confession on the second basis. We have inspected a

photostatic copy of it and find it to be in a large, full and legible hand extending over five pages of ruled, legal-size paper. According to the testimony it was written by an assistant State's Attorney as he interrogated defendant in the presence of a deputy sheriff. Defendant signed at the end, and on the left-hand margin of each sheet wrote 'O.K.—Joe Shelton—August 23/43.' He also initialed minor corrections in spelling and additions at several places on three different sheets. The deputy sheriff witnessed each page and testified that defendant read it over before he signed it, at the same time pointing out the errors in spelling which he initialed. *The jury heard all this testimony* after it was first given in a preliminary hearing before the court *and was in a position to determine the credit to be given it.*" (Emphasis added.) *Shelton*, 388 Ill. at 64, 57 N.E.2d at 478.

Of a similar nature is *People v. Gukouski* (1911), 250 Ill. 231, 95 N.E. 153. There, the defendants were of Polish origin and could not speak English. On appeal, the admissibility of written, signed statements was questioned. The supreme court stated:

"There is no evidence whatever that these confessions or statements were not freely and voluntarily made. The defendants all testified in their own behalf and did not deny that they made statements about the circumstances of the shooting freely and voluntarily, but they claim the statements they made were not taken down accurately by Capt. Kandzia, or, at least, that they did not know when they signed them that they contained certain matters that were in the papers when they were introduced in evidence. The written statements signed by Krolikowski and Gukouski the day following their arrest purported to be in their language, respectively. The circumstances under which they were made and signed entitled them to be admitted in evidence. The value of confessions as evidence depends upon the circumstances under which they were made. *The jury had all the circumstances before them, and the weight and credit to be given to the oral confession of Nogawischi and the written confessions or statements by Krolikowski and Gukouski were matters for them to determine.*" (Emphasis added.) *Gukouski*, 250 Ill. at 235, 95 N.E. at 154.

In *People v. Guertin* (1930), 342 Ill. 99, 173 N.E. 824, defendant was charged with rape. Defendant was interviewed by the State's Attorney and willingly signed a statement written by the State's Attorney. On appeal, defendant objected to the statement's admission

into evidence. The supreme court stated:

"This statement (People's exhibit I) was objected to as being improper and immaterial, and its admission in evidence is one of the errors assigned and relied upon as a reason for reversal. There was no objection that it was not freely and voluntarily made and it is not contended now that it was not so made. The document was not improper or immaterial and was properly admitted in evidence. The weight to be given to it was for the determination of the jury. The defendant went on the witness stand and testified that he signed it before he saw his attorney; that it was not explained to him but was read to him by the State's attorney; that he did not know at the time he testified what sexual intercourse meant; that the State's attorney asked him to sign and he signed willingly; that said term was not explained to him nor any other terms used in the statement, and he stated that he never had sexual relations with the complaining witness." *Guertin*, 342 Ill. at 101, 173 N.E. at 825.

■ These cases convince us that once the State has established by the officer's testimony a proper foundation concerning the creation of the written statement, defendant's reading it or it being read to him and defendant's signing of the statement, it becomes admissible. At that point, any questions concerning the statements should be left for the trier of fact to resolve when the trier determines what weight should be given to the statements. In the present case, the State has presented testimony concerning how the statements were written and that defendant signed them. All the officers testified defendant appeared to read the statements. Mann testified defendant read a portion out loud satisfactorily. Even defendant's stepfather stated he "imagined" defendant read the statement. This is sufficient to allow admission of the statements.

We realize defendant presented evidence that he did not read the statements. However, inasmuch as this question is controverted, it is a question better left to the trier of fact to determine when it gives the statements whatever weight they deserve.

■ We can envision the situation where it will be quite obvious that a defendant did not read or have read to him a statement written by another which the defendant signed. In such a case, the court could properly preclude its admission even though it was voluntarily given. However, the police officers would still be allowed to testify to the oral statement and should be able to use the statement to refresh their recollection if necessary.

1022

In the present case, the State has presented sufficient evidence to allow admission of the statements into evidence. The final question of their weight is up to the trier of fact.

For the above-stated reasons, the decision of the circuit court of Sangamon County is reversed and remanded.

Reversed and remanded.

GREEN, P.J., and SPITZ, J., concur.