THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* STEVEN SMITH, Defendant-Appellant.

(No. 56861;

First District (2nd Division)—October 9, 1973.

Gerald W. Getty, Public Defender, of Chicago, (Elliot M. Samuels and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and James N. Karahalios, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE LEIGHTON delivered the opinion of the court:

This is an appeal by the defendant, Steven Smith, from a conviction and sentence for aggravated battery. The prosecution was by a joint indictment in which defendant, Lonnie King and Charlie "Stone" Smith were charged with attempted murder and aggravated battery on two persons, Ronald Vandergrift and Gregory Sanders. In a jury trial, defendant and King were acquitted of all charges except aggravated battery on Ronald Vandergrift.

After ruling on post-trial motions, the trial court sentenced defendant to serve not less than 7 nor more than 10 years. Thereafter, claiming the existence of substantial constitutional questions, defendant appealed directly to the Supreme Court; however, the court decided, *sua sponte,* that defendant's appeal should be transferred to us for disposition.

King was sentenced to serve not less than 2 nor more than 5 years; and in a separate appeal, his case came to this court for our review. In an accompanying opinion, we have affirmed his conviction. See *People v. King,* 14 Ill.App.3d 995.

The record shows that on May 7, 1969, between 1:30 and 2:00 A.M., Ronald Vandergrift, Gregory Sanders and Felix Murry, members of a street gang known as the "Supreme Gangsters," were in the Shrimp Shop, 817 West 69th Street in Chicago. When Vandergrift walked out, he met Lonnie King, Charlie "Stone" Smith and defendant. Vandergrift knew King, having seen him many times prior to May 7. He had seen defendant once before. He knew that defendant and his companions were

members of the "Double Six Kings," a street gang that was partly affiliated with the Blackstone Rangers.

As King and Vandergrift walked from the Shrimp Shop, east on West 69th Street, they engaged in a conversation. King told Vandergrift that he did not belong in that "hood," meaning that neighborhood; that the "Stones" (meaning the Blackstone Rangers) ran that area and that Vandergrift and his friends did not belong there. The conversation continued until they reached the southwest corner of West 69th Street and Halsted Avenue. There, defendant, with Charlie "Stone" Smith nearby, joined King and Vandergrift, entered the conversation and told the latter that the "Stones" ran that area, "*  *  * that [Vandergrift and his companions] had better not come over in that neighborhood." As soon as defendant said this, according to Vandergrift and Sanders, he pulled out a .38 or .32 caliber pistol and fired twice, wounding Vandergrift in the groin, the bullet lodging in the outer part of his left thigh where it was at the time of defendant's trial.

After defendant's first shots, Vandergrift, Sanders and Murry fled across the street. Vandergrift reached the other side but fell between two cars. He called for help and Murry returned, picked him up and took him to the house of Larry Hoover, 68th and Green Street. According to Sanders, defendant, King and Charlie Smith were on the other side of the street; and after the first shots, they ran after him and Vandergrift. More shots were fired. A short time later, defendant, Charlie Smith and King returned and fled, going west. The police were called; Vandergrift and Sanders were taken to a hospital where Sanders learned that he had been grazed by a bullet.

Vandergrift was hospitalized three or four days, and after his release, he attended a "reconciliation" meeting at the Blackstone Rangers' headquarters attended by defendant, King, Charlie Smith and the main leaders of the Rangers. In a conversation with King, Charlie Smith and the Rangers' chief, in the presence of defendant, Vandergrift was told that the shooting of May 7 was an accident "*  *  * because they didn't know that we were with the Stones at the time." A few days later, Vandergrift again saw defendant, King and Charlie Smith. They were seated in the rear of a police car parked outside a poolroom. The officers asked Vandergrift if the three in the car were the persons who shot him. Vandergrift said they were but he told the policemen that "I did not want to prosecute because they said it was an accident, and also because we were in the same organization at the time."

A short time later, Vandergrift's street gang split from the Blackstone Rangers. He decided to prosecute defendant, King and Charlie Smith for the May 7 shooting. A month or so after the shooting incident, Van-

dergrift himself was taken into custody on two charges of aggravated battery, a marijuana charge and a charge involving bail jumping. He entered into discussions with prosecution authorities concerning his getting leniency if he would testify against the persons who had shot him. When Vandergrift testified, he told the jury that, although he expected to be punished for the crimes he had committed, "I expect to get help on my charges by testifying."

After Vandergrift and Sanders had testified, the State called Charles Hoover who lived in the house to which Vandergrift had been carried after he was shot on May 7. Hoover told the jury that on May 9, 1969, at about 4:00 P.M., he saw Lonnie King at 68th and Halsted. King said to him, "Tell Ronald Vandergrift that we were sorry that we shot him. We didn't know you was Stones [sic]." Hoover said he assured King that he was going to deliver the message. Hoover then recounted that the next time he saw King was on May 11, at the "reconciliation" meeting concerning which Vandergrift had testified. According to Hoover, among those present were defendant, King and Charlie Smith. Hoover's testimony closed the State's proof.

After a conference to settle instructions, the parties argued their case to the jury. In the opening argument for the State, one assistant State's Attorney said, "At any rate, the witness' testimony is uncontested. There are no contradictions to show that they are making up a story, so to speak. As a matter of fact, everything follows along very logically. And it is all very well connected. So what it amounts to is a question of whether you believe them. And since it is uncontested, you must under the law, find the defendant guilty." Defendant objected; the court sustained the objection. Thereafter, the other assistant State's Attorney in the closing argument, on six occasions, referred to the fact that the testimony of the State's witnesses was uncontradicted.

From these facts, defendant presents two issues. (1.) Whether in his joint trial with King, introduction into evidence of the statement attributed to King by Charles Hoover deprived defendant of the right of confrontation guaranteed by the sixth amendment to the Constitution of the United States. (2.) Whether the arguments to the jury in which two assistant State's Attorneys repeatedly called attention to the fact that the State's witnesses were uncontradicted prejudiced the defendant and deprived him of his right to a fair trial.

We notice that when the jury was instructed, it was told that it should "give separate consideration to each defendant. Each is entitled to have his case decided on the evidence and the law which is applicable to him. Any evidence which was limited to one defendant should not be considered by you as to any other defendant." However, the jury was not

given an instruction which required it to limit any particular evidence to one defendant, and, as to the other, not consider the evidence so limited. For example, the jury was not told to limit its consideration to King's statement only in determining King's guilt or innocence.

King did not testify. Therefore, defendant did not have the opportunity to cross-examine him concerning the statement attributed to him by Charles Hoover. For this reason, defendant contends that proof of King's statement violated the rule that in a joint trial, the admission in evidence of a nontestifying defendant's inculpatory admission or confession inculpating a codefendant infringes on that codefendant's sixth amendment right to confront witnesses against him. *Bruton v. United States* (1968), 391 U.S. 123, 20 L.Ed.2d 476, 88 S.Ct. 1620; *Roberts v. Russell* (1968), 392 U.S. 293, 20 L.Ed.2d 1100, 88 S.Ct. 1921; Annot., 29 L.Ed.2d 931.

It is our judgment that King's statement, "Tell Ronald Vandergrift that we were sorry that we shot him," implicated defendant and incriminated him before the jury. (See *State v. Swaney* (1971), 277 N.C. 602, 178 S.E.2d 399; compare *Clark v. United States* (9 Cir. 1969), 412 F.2d 491.) That statement, made out of defendant's presence without his consent and offered to prove the truth of the matter asserted, was inadmissible hearsay. (*People v. Tunstall*, 17 Ill.2d 160, 161 N.E.2d 300; see *People v. Brown*, 7 Ill.App.3d 748, 289 N.E.2d 452.) In fact, it was a constitutional error to admit Hoover's testimony concerning King's statement. (*People v. Hopkins*, 124 Ill.App.2d 415, 259 N.E.2d 577; *People v. Scott*, 100 Ill.App.2d 473, 241 N.E.2d 579.) Under the circumstances of this case, the error infringed on defendant's right to confront witnesses against him. *Davis v. Sigler*, (8 Cir. 1969), 415 F.2d 1159.

■■■ Nevertheless, not all constitutional errors are prejudicial. There are errors of constitutional dimensions which, in the setting of a particular case, are so unimportant and insignificant that, consistent with the federal constitution, they may be deemed harmless. (*Chapman v. California* (1967), 386 U.S. 18, 22, 17 L.Ed.2d 705, 87 S.Ct. 824; *People v. Smith*, 38 Ill.2d 13, 230 N.E.2d 188.) Accordingly, in an appropriate case, we may hold that a constitutional error is harmless. However, before doing so, we must be able to declare a belief that the error was harmless beyond a reasonable doubt. (*Harrington v. California* (1969), 395 U.S. 250, 23 L.Ed.2d 284, 89 S.Ct. 1726.) In such a case the question we must answer is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction. *Fahy v. Connecticut* (1963), 375 U.S. 85, 11 L.Ed.2d 171, 84 S.Ct. 229; com-

pare *People v. Davis,* 46 Ill.2d 554, 264 N.E.2d 140; see Annot., 24 A.L.R. 3d 1093.

■■ In the case before us, neither defendant nor King testified; the defense offered no evidence. Subject to questions concerning their credibility, there was no legal reason why the jury could not have believed the testimony of Ronald Vandergrift and Gregory Sanders. The evidence they gave, weighed against all the facts and circumstances, left no reasonable possibility that the jury would have acquitted defendant had the evidence of King's statement not been admitted. (See *Simpson v. Wainwright* (5 Cir. 1971) 439 F.2d 948, 952.) For these reasons, it is our belief, beyond a reasonable doubt, that the error in admitting the proof of King's statement was harmless because the jury in this case would not have returned a different verdict, even had the improper evidence been omitted. See *Schneble v. Florida* (1972), 405 U.S. 427, 31 L.Ed.2d 340, 92 S.Ct. 1056; *United States v. Mendoza* (9 Cir. 1971), 441 F.2d 1107, 1108.

When the parties argued their respective versions of the case to the jury, two assistant State's Attorneys, on seven occasions, commented on the fact that the testimony of the State's witnesses had not been contradicted. For example, they told the jury that "the witness' testimony is uncontested"; that the jury had "heard uncontradicted testimony"; that the jury should consider "the uncontradicted testimony that [it had] heard;" that the State's evidence "is uncontradicted"; that "if there were contradiction, it would have been brought in here;" and that the State had given the jury "uncontradicted testimony." Defendant contends that these comments were "an express, and therefore impermissible, reference to [his] failure to testify, in violation of his constitutional privilege against self-incrimination * * *." He argues that the remarks were contrary to the mandate of Illinois law, Ill. Rev. Stat. 1969, ch. 38, par. 155—1.[1] He insists that his constitutional right to remain silent was violated. Defendant supports his contention and argument with the precepts announced by the United States Supreme Court in *Griffin v. California* (1965), 380 U.S. 609, 14 L.Ed.2d 106, 85 S.Ct. 1229.

■■ To determine whether a defendant's right to remain silent was violated by a prosecutor's argument, the test is whether the remarks were "intended or calculated to direct the attention of the jury to the

---

[1] Ill. Rev. Stat. 1969, ch. 38, par. 155—1.

"* * * [A] defendant in any criminal case or proceeding shall only at his own request be deemed a competent witness, and his neglect to testify shall not create any presumption against him, nor shall the court permit any reference or comment to be made to or upon such neglect."

defendant's neglect to avail himself of his legal right to testify." (*People v. Burton*, 44 Ill.2d 53, 56, 254 N.E.2d 527.) From this test, it follows that a prosecutor cannot, directly or indirectly, comment on the failure of a defendant to be a witness in his own case.

■■ It is permissible, however, for a prosecutor to comment on the uncontradicted nature of the State's proof, even where the only person who could have contradicted the State's evidence was the defendant himself. (*People v. Mills*, 40 Ill.2d 4, 8, 237 N.E.2d 697; *People v. Mentola*, 47 Ill.2d 579, 268 N.E.2d 8.) For example, in *People v. Hopkins*, 52 Ill.2d 1, 284 N.E.2d 283, the prosecuting attorney, seven times, told the jury that the testimony of the State witness was "uncontradicted." The Supreme Court held that the argument did not constitute a comment on defendant's failure to testify. Mr. Justice Schaefer, speaking for a unanimous court, said, "The prosecution may * * * refer to the fact that the testimony of the State's witnesses is uncontradicted * * * for this involves no more than an accurate summary of the evidence." (52 Ill.2d 1, 6.) In our judgment, the same summary was made in this case. The assistant State's Attorneys merely commented, correctly, that the testimony of the State's witnesses was uncontradicted and the State's case was uncontested. The arguments did not prejudice defendant nor did they deprive him of his right to a fair trial. See *People v. Drayton*, 7 Ill.App.3d 812, 288 N.E.2d 922; compare *People v. Mattison*, 132 Ill.App.2d 1069, 271 N.E.2d 119; *Crane v. State* (1973), (Ind.App.), 299 N.E.2d 877.

■■ Although we have resolved the issues which defendant has presented, we notice that on January 1, 1973, while this appeal was under submission in this court, the Unified Code of Corrections became law. (See Ill. Rev. Stat., 1972 Supp., ch. 38, pars. 1001—1—1 to 1008—6—1.) The Code, in part, provides that "[i]f the offense being prosecuted has not reached the sentencing stage or a final adjudication, then for purpose of sentencing the sentences under this Act apply if they are less than under the prior law upon which the prosecution was commenced." (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1008—2—4.) This provision applies to cases pending on direct appeal at the time the Code became effective. *People v. Chupich*, 53 Ill.2d 572, 295 N.E.2d 1; *People v. Dalton*, 12 Ill.App.3d 1097, 299 N.E.2d 352.

Under the Code, aggravated battery, the offense for which defendant was convicted, is a Class 3 felony. The Code provides that the sentence for a felony in Class 3 shall be indeterminate and for any term in excess of one year not exceeding ten years. (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1005—8—1(b)(4).) It is further provided that "* * * for a Class 3 felony, the minimum term shall be 1 year unless the court,

having regard to the nature and circumstances of the offense and the history and character of the defendant sets a higher minimum term, which shall not be greater than one-third of the maximum term set in that case by the court * * *." (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1005—8—1(c)(4).) Defendant was sentenced to serve not less than 7 nor more than 10 years. It is obvious that the minimum of this sentence violates the "one to three" formula of the Code.

Defendant has not raised any issue concerning the conformance of his sentence to the provisions of the Unified Code of Corrections. We attribute this failure to the pendency of this appeal and the filing of defendant's brief before the Code became law. Therefore, in the interest of fundamental justice, we notice defendant's entitlement to modification of his sentence so that its minimum "* * * shall not be greater than one-third of the maximum term set in that case by the court * * *." (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1005—8—1(c)(4).) Accordingly, we modify defendant's sentence from 7 to 10 years to not less than 3 years and 4 months and not more than 10 years for aggravated battery, the offense of which he was convicted.

The conviction and sentence as modified are affirmed and the cause is remanded to the circuit court of Cook County with directions that the *mittimus,* modified as provided herein, issue in conformance with this opinion. *People v. Caritinos,* 9 Ill.App.3d 782, 292 N.E.2d 899.

Affirmed, sentence modified and cause remanded with directions.

DRUCKER and HAYES, JJ., concur.