THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LONNIE C. BINGHAM, Defendant-Appellant.

First District (5th Division)   Nos. 76-1326, 77-751 cons.

Opinion filed July 27, 1979.—Rehearing denied September 7, 1979.

420

Ralph Ruebner, of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and Francis X. Speh, Jr., Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE WILSON delivered the opinion of the court:

After a bench trial, defendant was convicted of attempt murder (Ill. Rev. Stat. 1971, ch. 38, pars. 8—4 and 9—1) and aggravated battery (Ill. Rev. Stat. 1971, ch. 38, par. 12—4) and sentenced to a term of not less than four years nor more than four years and one day on the attempt murder conviction. On appeal, he contends that he was not proven guilty beyond a reasonable doubt and that he was denied a fair trial as a result of numerous trial errors. We affirm in part, reverse in part.

Defendant's first contention is that he was not proven guilty beyond a reasonable doubt of attempt murder and aggravated battery. It is undisputed that sometime after 11 p.m. on August 30, 1973, defendant shot Rico Davis at close range. Since the shooting, Davis has been unable to walk. Defendant argues that the reliable evidence indicates that he shot Davis in self-defense. Alternatively, he argues that the evidence fails to show that he had the specific intent to kill.

Defendant testified that he was shooting craps with Davis on the night in question. He said that prior to that night he had overheard a conversation between Davis' brother and sister-in-law in which Davis was described as a "bad kid," but, nevertheless, he was shooting craps with Davis because he was not afraid of him. At about 11 p.m., Davis accused him of cheating in the game. When Davis began picking up some money which belonged to defendant, he asked Davis to give the money to him. Davis refused and told him that all he was going to get was an "ass

kicking." Davis continued to pick up the money, stood up, and then "went to go in his right pocket." Defendant then shot Davis with a gun which he had earlier purchased for his girl friend. When he fired the gun, Davis was about three feet away from him. He said he fired the gun to scare Davis because he thought that Davis was going for a gun. Although Davis had never pulled a gun on him before and although he had not seen Davis with a gun during the evening, he said that he had seen Davis with a gun at some prior time.

Emma Mae Harper, defendant's girl friend and the mother-in-law of one of Davis' brothers, testified that Davis had a reputation for being a violent person and that defendant had a reputation for being peaceful. Two other witnesses also testified that defendant had a reputation for being peaceful.

The State offered testimony from five occurrence witnesses, including Davis, and a brother, two friends, and a neighbor of Davis. They generally testified that although Davis had been making side bets during the craps game, he never placed any bets with defendant. One of them admitted, however, giving the police a statement in which he stated that Davis was betting with defendant. Sometime after 11 p.m., defendant told Davis that he owed him five dollars on a bet. Davis refused to pay the money and said that he had no bet with defendant. Davis then turned to leave. Shortly, someone called out his name and, as he turned around, defendant shot him in the right front shoulder. Davis testified that he could not remember where his hands were at this point, but that he probably had some money in his hands. Others testified that he had his hands up in the air, either before or after he turned, and that he had money in his hands. After the shooting, defendant and others ran from the scene. None of the witnesses testified that they had seen Davis with a gun or any weapon during the evening.

Defendant claims that this testimony creates a reasonable doubt of his guilt because the defense testimony was very plausible, authentic sounding, and convincing while the State's testimony was not very reliable because of its "evasive" character. In particular, he points out that there were discrepancies in the State's witnesses' testimony as to whether Davis raised his hands just before he was shot. He notes that several of the witnesses offered testimony which indicates that it would have been difficult for them to witness the events preceding the shooting. Further, he points to inconsistencies in their testimony as to specific events occurring earlier in the evening. We reject this claim.

■■ The issue of self-defense in this case was an issue for the trier of fact. (*People v. Campbell* (1978), 57 Ill. App. 3d 456, 373 N.E.2d 506.) In light of the absence of testimony that Davis was carrying a gun and the rather speculative nature of even Davis' alleged movement to his right

pocket, we cannot say that the trial court erred in rejecting defendant's theory of self-defense. Moreover, we believe that any discrepancies, difficulties in observation, and inconsistencies evident in the State's witnesses' testimony were matters of credibility, and thus, were properly matters within the special purview of the trial court. (*People v. Akis* (1976), 63 Ill. 2d 296, 347 N.E.2d 733.) On the record before us, we believe that there was sufficient evidence to convict defendant beyond a reasonable doubt.

■ We also reject defendant's alternate argument that the evidence fails to show that he had a specific intent to kill. Specific intent may be inferred from the character of the assault and the accompanying circumstances. (*People v. Thorns* (1978), 62 Ill. App. 3d 1028, 379 N.E.2d 641; *People v. Woods* (1978), 62 Ill. App. 3d 381, 378 N.E.2d 1271.) The undisputed evidence indicates that defendant shot Davis in the right front shoulder at extremely close range. Although defendant testified that he was shooting the gun only to scare Davis, the trial court need not have accepted this testimony. (See *Thorns.*) The trial court refused to believe the defendant and we see no reason to overturn that decision.

Defendant next contends that the trial court erred when it permitted two unlisted State eyewitnesses to testify without giving him adequate opportunity to prepare. Just prior to opening statements, the court allowed the State to amend its list of witnesses to include the names of two occurrence witnesses and further informed the defendant that he would have all the time he needed to interview the new witnesses. After opening statements, defendant was given at least two hours and 20 minutes to interview the new witnesses. When the trial recommenced, defense counsel stated that he was surprised by some of the information which he heard during the interviews. He asked the court for a continuance after the State had concluded its case so that he might re-examine some of the old witnesses in light of the statements of the new witnesses. The court denied the request for a continuance.

■■ The decision to allow unlisted witnesses to testify at trial is within the sound discretion of the trial court, and that decision will not be reversed absent some showing of surprise or prejudice. (*People v. Raby* (1968), 40 Ill. 2d 392, 240 N.E.2d 595.) Defense counsel explained to the court that he was surprised by some of the interview statements of the two new witnesses because their statements were substantially at variance with discovery information which he had previously received. Yet, despite this alleged substantial variance, the trial testimony of the two new witnesses did not significantly differ from the trial testimony of the State's other occurrence witnesses. The only difference in the new witnesses' testimony was that they said that Davis had his hands up before the shooting. This testimony was not critical. Absent any evidence that Davis was carrying a gun on the night of the shooting, the meaning of any movement prior to

the shooting was merely speculative. The cases cited by the defendant in support of his position (*People v. Lott* (1977), 66 Ill. 2d 290, 362 N.E.2d 312; *People v. Millan* (1977), 47 Ill. App. 3d 296, 361 N.E.2d 823) are distinguishable on grounds that they involve critical testimony by surprise witnesses. Moreover, we believe it significant that although defense counsel claimed surprise at the statements of the two new witnesses, he did not impeach these witnesses with any of the discovery information which he claimed differed from their statements.

■■ We also believe that the trial court did not err when it refused defendant's request for a continuance. As already noted, defendant was given at least two hours and 20 minutes to interview the new witnesses. This time allotment was sufficient to explore the potential testimony which proved to be largely cumulative. We believe that in light of the largely cumulative nature of this "new" testimony, there was no need to re-examine the older witnesses. Additionally, we note that defendant had three years to investigate these older witnesses and we find that to be sufficient time to fully explore their testimony.

Defendant contends that he was denied a fair trial when the trial court ruled that the State was not obligated to furnish him with the criminal conviction records of the State's witnesses. After the court denied the motion for a continuance, defendant renewed his request that the State furnish "rap sheets" on all of the State's witnesses. The State said it did not order rap sheets on any of the witnesses and that it was not obligated to order them. The trial court agreed and refused defendant's request.

Although defendant requested "rap sheets" which, of course, include more than just criminal conviction records, he was only entitled to receive prior criminal records under the clear language of the Illinois Supreme Court Rules. Supreme Court Rule 412(a)(vi) requires the State to disclose certain records within its control and possession, including any record of prior criminal convictions of any witness whom the State intends to call at trial. (Ill. Rev. Stat. 1971, ch. 110A, par. 412(a)(vi).) A failure to comply with a proper discovery request, however, only requires a reversal where such failure results in prejudice to the defendant. (See *People v. Green* (1976), 42 Ill. App. 3d 978, 356 N.E.2d 947.) Although the State should have ordered any criminal records once the defendant had made his request, we conclude that its failure to do so did not result in any prejudice.

■■ ■ We do not believe that the State can avoid its responsibility under Rule 412(a)(vi) by stating that it is under no obligation to provide any prior criminal records which it has not ordered from the appropriate law enforcement agency. Practically speaking, the State is in control of these records and is in a much better position than defendant to obtain these

records. This is particularly true in a case where witnesses have been added by the State at a late stage in the criminal proceedings. Nonetheless, since the new witnesses provided largely cumulative testimony, the defense was not prejudiced by the State's failure to order any criminal records on them. Also, we do not believe that defendant was prejudiced by the State's failure to order prior criminal records on the old witnesses. Though it is not clear whether any records did in fact exist, the defense had three years to investigate the backgrounds of the witnesses. Defendant's failure to discover any criminal records on any of the witnesses lends support to the conclusion that none existed. Also, other than the defense counsel's request for rap sheets on all of the State's witnesses, there is no evidence that defendant had persisted in his earlier request for any criminal records of the older witnesses. In light of defendant's opportunity to obtain criminal records, if they existed, we cannot say that he was prejudiced by the State's failure to order the records.

Defendant contends that he was denied a fair trial when the trial court barred him from inquiring on cross-examination about Davis' having been indicted for robbery and having been found guilty of armed robbery in a delinquency proceeding. He argues that the inquiry as to the indictment should have been permitted because the existence of an indictment shows bias arising out of a hope for leniency. He further argues that the inquiry as to the juvenile adjudication should have been permitted because it demonstrates "an even greater interest at stake in testifying for the prosecution." He explains that if Davis were, in fact, indicted for robbery and subsequently convicted, under the Juvenile Court Act (Ill. Rev. Stat. 1971, ch. 37, par. 701—1 *et seq.*), his prior juvenile adjudications could be considered in determining sentence on the robbery conviction. Although we believe that the trial court erred in not permitting an inquiry as to Davis' indictment for robbery, we conclude that the error did not manifestly prejudice defendant and thus, a reversal is not warranted. We find no error in the court's treatment of the inquiry as to Davis' juvenile adjudication.

An inquiry into the existence of an indictment is permissible when its purpose is to show bias, motive, or interest. (*People v. Barr* (1972), 51 Ill. 2d 50, 280 N.E.2d 708.) Defendant's inquiry into the existence of the indictment was for the purpose of showing bias and thus, the trial court's ruling was improper. Nonetheless, as we indicated in *People v. Boyce* (1977), 51 Ill. App. 3d 549, 366 N.E.2d 914:

> "Improper limitation of cross-examination by the defendant warrants reversal only where there has been a clear abuse of discretion and a showing of manifest prejudice to the defendant. (Citations.) Such is the case where the defendant is denied

reasonable access to an appropriate area of cross-examination of a witness whose testimony is crucial to the prosecution, or upon whose credibility the prosecution must stand or fall. (Citations.) However, any error in restricting the cross-examination of a witness whose testimony serves merely to buttress the prosecution, or on whose credibility alone the prosecution does not rest, must be deemed harmless." (51 Ill. App. 3d 549, 556, 366 N.E.2d 914, 920.)

Davis' testimony was not crucial to the prosecution. The State offered several other occurrence witnesses whose testimony was substantially similar to Davis' testimony. Also, the defendant testified to facts from which an inference of his guilt could be drawn. Under these circumstances, a reversal is not warranted due to the improper restriction of defendant's inquiry.

■■ The scope of cross-examination as to the existence of juvenile records is within the sound discretion of the trial court. (*People v. Holsey* (1975), 30 Ill. App. 3d 716, 332 N.E.2d 699.) In determining whether inquiry into juvenile records is proper in a given case, the court must balance the importance of the witness' testimony against the State's policy of preserving the anonymity of the juvenile offender. (*Holsey.*) In the instant case, Davis' testimony was not crucial and, as a result, we find no abuse of the trial court's discretion in excluding inquiry into this area.

■■ Defendant next contends that he was denied due process when his silence at arrest was introduced as evidence against him. On cross-examination by the State, he was asked whether he had told the police about the shooting or about Davis' movement toward his right pocket prior to the shooting; he replied that he had not told the police anything. Although defendant objected to these questions at trial on grounds of lack of foundation, he failed to present his present contention to the court in his post-trial motion. We decline to consider the merits of this contention because defendant has failed to properly preserve it for review.

■■ ■ Generally, an issue will be considered waived if not raised in a post-trial motion for a new trial. (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.) A reviewing court may, however, consider the issue if it involves plain error or defects affecting substantial rights. (Ill. Rev. Stat. 1971, ch. 110A, par. 615(a).) A key factor in the determination of whether to consider the issue is the closeness of the case. (*Pickett; People v. Schoo* (1977), 55 Ill. App. 3d 163, 371 N.E.2d 86.) The evidence in this case was not closely balanced. The State presented testimony from several occurrence witnesses indicating that defendant unjustifiably shot Davis. Also, inferences may be drawn from defendant's testimony indicating that the shooting was unjustified. We think that all of this testimony so convincingly points to defendant's guilt that there is no reason to relax the

waiver rule. Furthermore, we note that this case was tried before the bench and there is a presumption that the judge only considered admissible evidence in rendering his decision. (*People v. Pagan* (1972), 52 Ill. 2d 525, 288 N.E.2d 102.) We see no reason to believe that the trial judge considered anything but admissible evidence in rendering his decision in this case.

Defendant contends that the trial court erred in permitting the State to bolster a witness' testimony with his written statement to the police. Upon careful review of the record, we find no merit to this contention since the witness was merely asked to identify his signature on the statement and was not asked any questions on the content of the statement.

Defendant next contends that the trial court erred when it barred testimony of a private investigator that Davis had a reputation for violence. In an offer of proof, defense counsel indicated that if the investigator were allowed to testify he would state that he had interviewed 20 to 30 people who resided in Davis' immediate neighborhood and that they all agreed that Davis had a bad reputation for violence. The trial court refused to allow the investigator to testify. Defendant claims error, stating that the investigator's testimony bore indicia of reliability and the State could cross-examine him concerning any deficiencies. We disagree.

■■■ Whether a witness is sufficiently qualified to testify as a community reputation witness is a matter within the discretion of the trial court and its decision will not be disturbed absent an abuse of discretion. (*People v. Emmett* (1975), 34 Ill. App. 3d 167, 340 N.E.2d 235; 1 Wharton's Criminal Evidence §230, at 499 (13th ed. C. E. Torcia 1972).) Community reputation testimony about a person must be based upon a witness' knowledge through association and contact with the person's friends and neighbors. (*People v. Shelton* (1944), 388 Ill. 56, 57 N.E.2d 473.) Defendant claims that the investigator's interview of 20 to 30 individuals living in Davis' immediate neighborhood gave him sufficient contact with Davis' friends and neighbors so that his testimony should have been permitted. He also claims that the number of his sampling assured the accuracy of the reputation to which he would testify. Though we do not rule out the possibility that an investigator may under certain circumstances give qualified testimony as to community reputation and we recognize the few authorities in support of this proposition (*State v. Cross* (Mo. 1961), 343 S.W.2d 20; *State v. Cole* (1973), 20 N. C. App. 137, 201 S.E.2d 100; 3 Wigmore, Evidence §692, at 22 (Chadbourn rev. 1970)), we do not believe that defense counsel's offer of proof sufficiently demonstrates the investigator's reliability. Defense counsel did not inform the trial court of any of the details of the investigation. Without some

knowledge of the length of the interviews, the types of questions asked, the method used in selecting the interviewees, and other relevant information, the trial court could not determine that the investigator's testimony was reliable. Absent a prior presentation of this information to the court, we cannot say that the trial court abused its discretion in denying the investigator's testimony.

■■ Defendant contends that the trial court misapprehended the minimum sentence for attempt murder. At the sentencing proceeding the following comments were made:

"Mr. Roth [Assistant State's Attorney]: Mr. Bingham has already been found guilty of the crime of attempted murder and aggravated battery. I believe that by law attempted murder is punishable by a minimum of four years in the penitentiary. I am sorry. It is probational but if you sentence him to jail, I believe it is a minimum of four years on attempted murder.

The Court: Thank you very much.

The Court will sentence Lonnie Bingham, on a charge of attempted murder and not aggravated battery on the theory that aggravated battery merges into the attempted murder.

On the charge of attempted murder, the finding and the judgment for Lonnie Bingham will be a sentence to the Illinois Penitentiary for a period of not less than four years nor more than four years and one day."

Defendant reasons that since the assistant State's Attorney had erroneously thought that the minimum term of imprisonment for attempt murder was four years, the court's decision to sentence defendant to a term of four years to four years and one day was necessarily based on this erroneous belief. We disagree. The statements of the trial court do not indicate agreement with or reliance upon the assistant State's Attorney's erroneous belief. As such, they do not represent a clear misapprehension of what the law requires. (*People v. Thomas* (1978), 60 Ill. App. 3d 673, 377 N.E.2d 195.) Absent such a clear misapprehension of the law, we must presume that the trial court fully understood the sentencing structure for attempt murder.

■■ Defendant's last contention is that his conviction for aggravated battery must be vacated as a lesser included offense of attempt murder. We agree and thus, we reverse the aggravated battery conviction. *People v. Campbell* (1978), 57 Ill. App. 3d 456, 373 N.E.2d 506.

Affirmed in part, reversed in part.

LORENZ and MEJDA, JJ., concur.