THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JOHNNY BILLUPS, Defendant-Appellant.

First District (1st Division)    No. 79-314

Opinion filed June 2, 1980.

Nathaniel R. Howse, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Iris E. Sholder, and Jeremiah W. Lynch, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

After a jury trial, Johnny Billups (defendant) was found guilty on one count of attempt murder and two counts of aggravated battery. He was acquitted on two other counts of aggravated battery. He was sentenced to 3 1/3 to 33 years and he appeals.

In this court, defendant contends he was not proven guilty beyond a reasonable doubt of attempt murder or aggravated battery and the trial court erred in refusing one of defendant's jury instructions.

Yvonne Stone testified that on June 23, 1977, at 7:40 p.m., she was driving her automobile on Ogden Avenue. Her husband, Charles Stone, was sitting in the front passenger seat. Her brother, Lonzo Hicks, was sitting in the back seat on the passenger side. Mrs. Stone pulled the car

over and double-parked on the 3200 block of West Ogden. There she saw the defendant, whom she had known for about two years, sitting on a fireplug.

Mr. Stone left the car and went into a tavern to purchase some liquor. She and Hicks remained in the car. A few minutes later, Mr. Stone returned to the car and rolled a marijuana cigarette. A man named Lonnie approached the car and spoke to Mr. Stone. As Mr. Stone and Lonnie were talking, Mrs. Stone and Hicks had a drink from the bottle of liquor purchased by Mr. Stone.

Mrs. Stone then saw the defendant in the rearview mirror about two car lengths behind her. Defendant walked to his Cadillac automobile and entered through the passenger door. He left the car carrying a "machine gun." Defendant approached the passenger side of Mrs. Stone's car where her husband was seated. Defendant called out, "Stone." As the Stones and Hicks turned to look, defendant fired many shots at Mrs. Stone and the others in the car. Mrs. Stone began to drive eastbound on Ogden. She was hit by a shot and her legs went numb. Her foot became stuck on the gas pedal. As her car pulled away, the defendant ran out into the street and continued shooting. He shot out the back window of the car. The shots also tore up the rear door on the passenger side of the car.

Mrs. Stone lost control over the car. The car struck a lightpole, crossed the median, went into the oncoming traffic lanes and crashed into a fence. The car came to a stop about two blocks from where defendant had been shooting. Mr. Stone was still in the passenger side but Hicks had fallen out of the car while it was moving. Police officers arrived in a few moments. Mrs. Stone was taken by ambulance to the hospital. Surgery was necessary to remove bullet fragments. She remained in the hospital for two weeks. Since then she has limped when walking. Mrs. Stone further testified no one in her car had a weapon.

Lonzo Hicks fully corroborated Mrs. Stone's testimony. He added he and Mr. Stone attempted to use the steering wheel. Defendant had run into the street and continued to shoot at the car. At the hospital, Hicks saw defendant with two police officers and identified him as the man who shot Mrs. Stone.

Charles Stone testified his wife double-parked the car. He had wanted to get some marijuana at this location. He sat in the passenger seat and talked to a friend of his named Lonnie who stood outside the car. He rolled three marijuana cigarettes and gave one to Lonnie. Mr. Stone stated he did not leave the car to go into the liquor store.

After Lonnie left, Mr. Stone noticed the defendant standing on the sidewalk pointing a gun at him. Mr. Stone told his wife to pull away. Defendant had "a funny smile on his face" and yelled, "Stone." Defendant started shooting. As Mrs. Stone pulled the car away, defendant ran out

into the street and kept shooting. Defendant fired about 10 shots. Mr. Stone corroborated the testimony of Lonzo Hicks as to what happened after the car pulled away from defendant. He also stated neither he, Mrs. Stone or Hicks had a weapon with them. He identified the defendant's gun in court.

Officer Jude Evans of the Chicago police department testified he and his partner were in an unmarked vehicle at the scene on the night in question. They noted a Cadillac eastbound on Ogden go through a red light, cross a "median section," hit a pole, and "crash" into a vacant lot. The officers approached the car. Its back window had been broken out and it had a number of bullet holes. Mr. Stone pulled Mrs. Stone out of the car. She was bleeding from her back. Lonzo Hicks was already out of the car. The three people told Officer Evans they had been shot at and he called for an ambulance.

The officers searched Mr. Stone and Hicks. No weapon was found on either of them. The car and the area around it was searched and nothing was found. Mrs. Stone was searched at the hospital, without result. Defendant was brought to the hospital later in the evening and was identified by Mrs. Stone. He was placed under arrest. Defendant told Evans the Stones had robbed him two weeks earlier of $200 on the front porch of his home. Charles Stone used a handgun during this robbery. Defendant never reported this robbery to the police. Defendant told Evans he was responsible for the shooting that day.

Officer William Brown testified he received a radio call directing him and his partner to a designated address to acquire information. Officer Brown met defendant at that address. Defendant admitted responsibility for the shooting that day. Defendant told Brown he had an altercation with some people over some money and "he had to shoot in self-defense." He gave Officer Brown the semiautomatic rifle he used in the shooting.

Officer Ollie Brumfield, an evidence technician, arrived at the scene of the car wreck on the evening of the shooting. He photographed the damage done to the automobile by the gunfire. He extracted fragments of three bullets from the car.

Officer Donald Smith, a firearms examiner, testified a test comparing bullets fired from defendant's rifle with two of the three bullet fragments recovered from the Stones' automobile established defendant's rifle was the weapon that fired them. The third fragment could not be so identified.

Tony Collins testified for the defense. He was standing at the scene on the night in question. Defendant was next to him, seated on a fireplug. Collins saw Charles Stone exit a car Yvonne Stone was driving. A third person, whom Collins did not know, sat in the back seat. Collins saw Mrs. Stone give Mr. Stone a pistol. Mr. Stone crossed the street, smiled at

Collins and the defendant, put the pistol under his belt, and entered the tavern. Stone left the tavern 30 seconds later and entered the passenger side of the car. They drove off southward on Sawyer. Collins then entered the tavern while defendant remained outside. Five minutes after he entered the tavern, Collins heard shots outside. He did not leave the tavern and did not know who did the shooting. Collins testified he never told the police about anything that happened.

Defendant testified he was seated on a fireplug in the company of Tony Collins and some other men. Charles and Yvonne Stone pulled up in a car. Defendant did not see anyone in the back seat of the car. Mr. Stone left the car and entered a tavern. Mr. Stone had his hand inside his shirt and was carrying a pearl-handled nickel-plated pistol. Mr. Stone had his hand on the gun handle but defendant was still able to see the color of the handle. A few minutes later, Mr. Stone left the tavern and told defendant he would see him "later on." Defendant did not see anything in Mr. Stone's hand when he left the tavern. Mr. Stone entered his car and drove off. Defendant went to his car, took his rifle out of the trunk, and sat down on the front seat.

The car Mr. Stone was in then pulled up again and parked about three car lengths in front of defendant. Mr. Stone carried a pistol pointed up in the air. Defendant loaded his gun with 20 to 30 bullets. When Mr. Stone was about to leave his car, defendant exited his own car with the loaded rifle. He told Stone, "Don't get out of the car." Defendant shot his gun "twice towards the ground" while standing 30 feet behind the Stones' car. Defendant then heard two or three more shots. Defendant stated he only shot twice towards Mr. Stone's car. He never saw the back window of the car shatter. However, he did put a bullet hole in the side of the car.

The Stone car struck a post and stopped. Defendant returned to his own car and drove to his mother's house to call the police. Defendant further testified he did not intend to shoot anyone but he was upset because Mr. Stone had a gun and "was going to shoot me, because he had threatened me earlier, and I knew to protect myself, I had to."

Dr. Penchala Sompalli, who performed surgery on Yvonne Stone, testified she had sustained a gunshot wound to the abdomen. The bullet entered to the right of the abdominal region and exited on the left on the same horizontal plane, fracturing a spinal vertebra on the way. There was some blackening around the entry wound, which could have been powder burns. However, he was not sure the blackening was powder burns and he did not test for them.

Keith Scholl, a nurse who treated Yvonne Stone at the hospital on the night of the shooting, testified that while Mrs. Stone was alert and responsive, she told him she was shot by an unknown person. Scholl also

testified he considered Mrs. Stone to have been in a state of shock at the time she had this conversation with him.

As regards sufficiency of the evidence, defendant first contends he was not proven guilty beyond a reasonable doubt of aggravated battery because the prosecution testimony indicates defendant was standing on the curb slightly higher than the street. There were no bullet holes in the front passenger door of the car. Charles Stone seated on the right side of the car did not suffer any gunshot wounds. The bullet entered Mrs. Stone's body on the right side and exited on the left side on the same level.

Defendant and Collins testified Charles Stone had a gun. Dr. Sompalli testified there was blackening around the entrance wound that could have been powder burns. The nurse testified Yvonne Stone told him she was shot by an unknown person. Defendant therefore argues the bullet that struck Yvonne Stone was fired from inside the car.

In our opinion, the evidence establishes beyond a reasonable doubt that defendant shot Yvonne Stone. The evidence indicated the front window was down on the front passenger door. The bullet that struck Yvonne Stone could have come in through this open window. Photographs taken of the car soon after the crash show the driver's seat was in a forward position closer to the steering wheel than the passenger seat was. Therefore, Charles Stone did not necessarily block a bullet coming through the window at Yvonne Stone.

Mrs. Stone testified that as defendant started firing from her right, she drove away. This required turning of her car to the left. A sudden turn of the steering wheel to the left, necessarily combined with a leaning of her body to the left away from the side the bullets were coming from, would have caused Mrs. Stone to raise her right hip. Therefore, a bullet coming from the open window on the other side of the car would pass through her hip region in a virtually horizontal plane. While Dr. Sompalli stated the blackening around the entry wound could have been powder burns, he also testified he never tested for powder burns and did not know what the blackening really was. He indicated it may have been a bruise instead. The nurse testified Yvonne Stone was in a state of shock when she told him she was shot by an unknown person. Also, it is pure conjecture that such an admission indicates Mrs. Stone was shot by someone in the car. ■▌ Also the fact that police officers witnessed the crash of the car and immediately searched the car, its occupants, and the area around the car and found no weapons corroborates the testimony of the Stones and Hicks that they had no weapons at the time of the shooting. Any variations in testimony were simply questions of credibility for the jury to decide. *People v. Rodgers* (1978), 58 Ill. App. 3d 719, 722, 374 N.E.2d 721.

We do not find " '* * * the evidence is so improbable as to raise a

reasonable doubt of guilt.' " (*People v. Manion* (1977), 67 Ill. 2d 564, 578, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513, quoting *People v. Stringer* (1972), 52 Ill. 2d 564, 568, 289 N.E.2d 631.) On the contrary, we find the evidence in this regard strong to the point of being overwhelming. Virtually the only evidence contrary to the prosecution's case is that of defendant himself, whose credibility is quite doubtful. We therefore affirm the conviction on the two counts of aggravated battery.

Defendant contends he was not proven guilty of attempt murder beyond a reasonable doubt because the evidence at trial did not indicate defendant had the requisite specific intent to commit murder. Defendant testified he did not intend to shoot anyone and he shot his gun only because Charles Stone had a gun and "was going to shoot me, because he had threatened me earlier, and I knew to protect myself, I had to." However, as noted before, the weight of the evidence strongly indicates none of the occupants of Stone's car had a weapon at the time of the shooting. At best, defendant can only say the prosecution and, defense presented conflicting positions as to this issue and the entire issue of intent.

In such a situation, where the finder of fact must determine defendant's state of mind at the time of the offense, it has been held by this court (*People v. Thomas* (1978), 60 Ill. App. 3d 673, 676-77, 377 N.E.2d 195):

> "The right to believe or disbelieve testimony as to the state of mind of the defendant or the existence of the requisite felonious intent is the prerogative of the trier of fact. [Citations.] Intent, which can seldom be proved by direct evidence, may be deduced, or inferred, by the trier of fact from acts committed and circumstances in evidence. [Citation.] The specific intent to take a life is a state of mind that, where it is not admitted, may be inferred from the character of the assault, the use of a deadly weapon, and other circumstances. [Citations.]"

Here, there was ample evidence from which the jury could infer defendant had the specific intent to kill. The Stones and Hicks all testified defendant approached them and shot at them with a semiautomatic rifle when they were parked and he continued shooting as they attempted to flee in their car. Other evidence shows that as Yvonne Stone was driving away, defendant fired another shot which shattered the rear window of the car. The character of this assault and the type of deadly weapon used by defendant strongly refute the argument that defendant was acting in self-defense or believed he was acting in self-defense. This, combined with the totality of the circumstances of this case, as above shown, indicates defendant did have the specific intent to kill. (*People v. Humes*

(1979), 78 Ill. App. 3d 255, 260, 397 N.E.2d 130, and cases there cited.) Therefore, defendant was proven guilty of attempt murder beyond a reasonable doubt.

Defendant tendered the following non-IPI instruction (defendant's No. 6) which was refused by the trial court:

"A person who intentionally or knowingly causes permanent disfigurement to another does not commit the offense of attempt murder if at the time of causing the permanent disfigurement he believed the degree of force used was necessary to prevent imminent death or great bodily harm to himself, even if the belief was unreasonable."

Defendant contends this "modified" version of an IPI Criminal instruction on voluntary manslaughter (Illinois Pattern Jury Instructions, Criminal, No. 7.05 (1968) (hereinafter cited as IPI Criminal)) was necessary to adequately instruct the jury as to the requisite intent to kill required for attempt murder.

■■ Our supreme court has taken a strict view as to jury instruction for attempt murder. "An instruction must make it clear that to convict for attempted murder nothing less than a criminal intent to kill must be shown." *People v. Harris* (1978), 72 Ill. 2d 16, 27, 377 N.E.2d 28.

However, in the instant case, the IPI Criminal instructions given to the jury on attempt murder followed these guidelines with only an essential modification limiting the required intent to "intends to kill * * *." See IPI Criminal Nos. 6.07, 7.01.

In addition, the trial court correctly instructed the jury on self-defense. IPI Criminal No. 24.06.

■■ In our opinion, these given instructions were clear in directing the jury they could convict defendant of attempt murder only if they found he had a specific intent to kill. These instructions also make it clear that if defendant was only concerned with his own safety and did not have the specific intent to kill at the time of the shooting, he was innocent of attempt murder. We therefore reject defendant's contention.

Defendant also contends that if Mrs. Stone had been killed and defendant had been charged with murder, he would have been entitled to an instruction on the lesser included offense of voluntary manslaughter. Defendant thus argues it was error not to give his rejected instruction.

The defendant's proposed instruction above set out brings in elements of voluntary manslaughter, with which defendant was not charged and which is not an included offense in the charge of attempt murder. Thus, the proposed instruction "might have confused or misled the jury, and no error was committed in its refusal." (*People v. Rongetti* (1931), 344 Ill. 278, 288, 176 N.E. 298, *cert. denied* (1931), 284 U.S. 656, 76 L. Ed. 556, 52 S. Ct. 34; *People v. Godbout* (1976), 42 Ill. App. 3d 1001,

1009, 356 N.E.2d 865.) Furthermore, the non-IPI instruction submitted by defendant was not "simple, brief, impartial, and free from argument." (See Ill. Rev. Stat. 1977, ch. 110A, par. 451(a); *People v. Poe* (1971), 48 Ill. 2d 506, 511, 272 N.E.2d 28, *cert. denied* (1971), 404 U.S. 942, 30 L. Ed. 2d 256, 92 S. Ct. 292.) In fact, defendant's instruction links elements of aggravated battery to elements of attempt murder in such a way that the jury might have felt compelled wholly to convict or wholly to acquit the defendant instead of considering each charge separately.

In addition, in view of the overwhelming evidence of guilt, even if the defendant's contentions had merit, the error would be harmless beyond a reasonable doubt. (See *People v. Lindsay* (1978), 67 Ill. App. 3d 638, 650-51, 384 N.E.2d 793.) The judgment appealed from is accordingly affirmed.

Judgment affirmed.

O'CONNOR and CAMPBELL, JJ., concur.